Argued at Pendleton May 7; reversed December 23, 1930

# CONTINENTAL GUARANTY CORPORATION *v.* CHRISMAN ET AL.

(294 P. 596)

*Carlton L. Pepper* of The Dalles (R. R. Butler of The Dalles on the brief) for Continental Guaranty Corporation.

*Francis V. Galloway* of The Dalles for Chrisman.

*Nicholas Jaureguy* of Portland (Jaureguy & Tooze and J. G. Arnold, all of Portland, on the brief) for appellants.

ROSSMAN, J. January 27, 1928, the plaintiff filed in the circuit court a complaint which alleged that the respondent Chrisman was the sheriff of Wasco county; that in another action which the plaintiff commenced in the circuit court of that county against the Motor Service Company, July 24, 1920, to recover the sum of $3,259.13, Chrisman, as sheriff, negligently failed to serve a writ of attachment; that the defendant in that action, at the time when the writ was issued, owned property of the value of $3,500, subject to attachment; and that as the result of the aforementioned negligent act of Chrisman the plaintiff was unable to collect the judgment which it subsequently secured against that defendant June 29, 1927, in the amount of $3,132.51, interest and costs. The complaint concluded with a prayer demanding judgment against Chrisman for the sum of $3,259.13, together with costs and disbursements. Upon being served with the complaint and summons defendant Chrisman obtained an order making as additional defendants the three appellants. Thereafter he filed an answer which admitted all of

the averments of the complaint except the allegations which charged him with negligence, and which averred the value of the Motor Service Company's property. Continuing his answer alleged "a second further and separate defense to plaintiff's complaint, and by way of cross-complaint in equity against the defendants, Victor Marden, Mace Fulton and Ed Ball" (these appellants). In this further defense and cross-complaint Chrisman alleged that before he undertook to serve the writ of attachment the Motor Service Company delivered to him a "bond * * * conditioned upon preventing the levying of said attachment" with itself as principal and the three appellants as sureties in the amount of $2,500; that through inadvertence and mistake the sureties neglected to sign the attestation clause following the signature of the Motor Service Company; that they, however, attached their signatures to the affidavit where each swore he owned property worth $2,600, subject to execution; that the three appellants intended to render themselves liable upon the bond; and that he, Chrisman, was unaware of the irregularities when the instrument was filed with him. We now quote from this pleading as follows:

"At the time of the execution and delivery of said bond it was inspected by Mr. C. L. Pepper, attorney for plaintiff, who did thereupon approve said bond, both in form and as to the financial responsibility of the sureties; and plaintiff, by its attorney, thereupon advised this defendant not to proceed further with the execution of said writ of attachment, but that the said bond was sufficient for all purposes of indemnity to all persons and officers involved in said litigation; and that, relying upon such assurance from plaintiff, this defendant accepted and has kept said bond, and has never had any knowledge, notice, or information

from any person or circumstance until shortly before the bringing of this action, that either the sureties on said bond would or did repudiate their liability thereon, or that the plaintiff did not consider that this defendant and itself were fully indemnified thereby; and that this defendant did therefore, as far as his alleged or pretended liability to plaintiff, believe and rely upon the statements and representations of plaintiff made upon and after an inspection of said bond; and that by reason of such statements so made and believed and relied upon by this defendant, the plaintiff should be and is now estopped from asserting any claim of liability against this defendant.''

In conclusion the cross-complaint avers that the bond should be reformed so as to conform the signatures to the intention of the parties, which Chrisman alleges was to render the appellants liable upon the bond. Accordingly he charges that the signatures of the three appellants should be attached to the attestation clause. The prayer prays that the complaint be dismissed as to Chrisman, and that the bond be reformed in the above particular. A demurrer of the appellants to the ''cross-complaint,'' on the ground that it did not allege a cause of suit against them, was overruled. They pleaded no further to it. The plaintiff filed a reply to the new matter contained in Chrisman's answer, which admitted all of its averments except the charges that the plaintiff had approved the bond and had directed the sheriff not to serve the writ of attachment. After the appellants had been made parties to the cause they filed an answer to the complaint (of the plaintiff) which denied substantially all of its averments. Later the court, upon the motion of the plaintiff, permitted it to file a supplemental complaint. This pleading, which is entitled a ''supple-

mental complaint,'' but which Chrisman's brief states is ''perhaps erroneously termed a suplemental complaint,'' after repeating that the plaintiff, in April of 1921, filed an action against the Motor Service Company, obtained a writ of attachment and later recovered judgment, averred that Chrisman attempted to attach the Motor Service Company's property; that the corporation as principal and these appellants as sureties delivered to the sheriff ''a certain bond * * * purported to have been properly signed and executed'' by both principal and sureties for the purpose of preventing the seizure of the corporation's property; that the sheriff accepted the bond, refrained from proceeding with the writ, and concluded with an allegation that the plaintiff had demanded from the appellants payment of its judgment against the Motor Service Company. It made no mention of any errors in the execution of the bond. The prayer asked, ''in addition to the judgment as demanded in its original complaint,'' judgment against the three appellants for the sum of $3,133.51, together with interest and costs, ''and for such other and further relief as to the court may seem equitable and just.'' The appellants moved to strike this ''supplemental complaint'' on the ground, among others, that the allegations contained in it were not supplemental in character. When this motion was denied they filed an answer which denied all portions of that pleading except the corporate existence of the plaintiff and the incumbency of Chrisman as sheriff of the county. Chrisman's answer admitted substantially all averments of the ''supplemental complaint.''

The appellants did not appear at the trial. The decree ordered the reformation of the aforementioned bond ''by inserting upon the blank lines in said under-

taking, and immediately following the signature of the Motor Service Company, a corporation, thereon, the names of the said sureties,'' and gave judgment upon the reformed instrument in favor of the plaintiff and against the appellants. The decree made no mention of Chrisman and of the plaintiff's demands against him. The three alleged sureties have appealed, and contend that the circuit court committed several errors in reaching the conclusion that they were liable upon the bond.

It is evident that the so-called supplemental complaint was not intended as a substitute for the original complaint. It expressly referred to the latter and demanded judgment against the sureties ''in addition to the judgment as demanded in the original complaint on file in this proceeding.'' Nevertheless, we do not believe that a conclusion is warranted that the plaintiff sought double relief; our opinion, confirmed by respondent's brief, is that the plaintiff endeavored to proceed against the parties in an alternative form. Apparently it was unwilling to hazard a choice between the two, and preferred that the court should not render its decision unless both groups of prospective judgment debtors were before it in the one action. It, therefore, asked judgment against either (1) Chrisman for his alleged negligent failure to serve the writ of attachment, or (2) judgment against the appellants upon the bond on the theory that it was a valid undertaking in its unreformed condition. We shall now undertake to determine whether the circuit court erred when it made the appellants parties defendant.

 It will be observed that the cause was begun as an action at law against the sheriff based upon a charge that he had negligently failed to serve a writ of attach-

ment. Following his appearance several developments occurred: (1) the appellants were made parties defendant upon the motion of the sheriff; (2) the answer of the sheriff alleged the imperfectly executed bond and sought its reformation; and (3) the "supplemental complaint" appeared which ignored the cross-complaint's prayer for the reformation of the bond but sought judgment upon it in its unreformed condition. Or. L., § 41, is the provision of our code which makes provision for adding other parties to a pending action; it reads thus: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in." It will be observed that the controversy to which additional parties may be added is thus described in the foregoing section of our code: "the controversy." The controversy means the action pending before the court when the motion to add additional parties is filed: *Tichenor v. Coggins,* 8 Or. 270; *Ladd & Tilton Bank v. Rosenstein,* 122 Wash. 301 (210 P. 677); Bancroft Code Pleading, § 571. The controversy before the court when the appellants were injected as additional parties defendant was based upon a charge that Chrisman, as sheriff, had negligently failed to perform a duty which he owed to the plaintiff. If the plaintiff preferred to make that charge, and to ignore the alleged bond, he certainly had a lawful right to do so. The question now occurs whether a complete determination of the controversy mentioned in the complaint could be had without the presence of the appellants. It seems to us that as complete a trial of that issue

could be had without appellants as parties defendant as with them. If, at the conclusion of the trial it appeared, as the cross-complaint alleges, that the defectively executed bond was posted with the sheriff, and that he refrained from serving the writ of attachment upon the direction of the plaintiff's counsel after the latter had examined the bond, the sheriff's defense was as complete as it could have been whether the appellants were parties defendant or not. Possibly it may be argued, however, that the reformed bond would be more effective as a defense than the scattered facts, recited in the cross-complaint, upon which the sheriff would otherwise be compelled to rely. Assuming, but not deciding, that the sheriff had a sufficient interest in the undertaking to justify him in maintaining a suit for its reformation, the question presents itself whether the averments of the cross-complaint are sufficient to warrant a reformation of the bond. While that pleading avers an intention upon the part of the appellants "to legally sign" the bond, and an expectation upon the part of the sheriff to receive one properly executed, it also alleges that before the sheriff refrained from proceeding with the levy of the writ the attorney for the plaintiff "inspected" the bond, approved it, both "in form and as to the financial responsibility of the sureties;" and then directed the sheriff to proceed no further because the said "bond was sufficient for all purposes of indemnity." The cross-complaint so firmly declares the plaintiff's familiarity with the manner in which the bond was executed that it alleges the plaintiff should be estopped from maintaining this action against the sheriff. The bond was not payable to the sheriff; it recites "we will pay to the plaintiff, upon demand * * *." Or. L., § 311, which is the provision of our

code which the parties evidently believed warranted a delivery of the undertaking in lieu of the execution of the attachment, describes a bond payable to the plaintiff in the case and not to the sheriff. It thus conclusively appears from the cross-complaint that the obligee of this bond "inspected" it, "approved" it, both in form and also as to the sufficiency of the sureties, and then directed the sheriff to refrain from levying the writ. Those being the facts we cannot understand how a reformation of the instrument would be authorized so as to render it more effective as an implement of defense. Evidently the document is now executed in precisely the manner that the obligee intended it should be after it had "inspected" and "approved" it. Possibly the sheriff expected one differently signed, but his defense is complete when he sustains his answer with proof. He cannot reform an agreement, existing between the plaintiff and a third party, so as to make it read contrary to their intentions. Moreover, had he followed the mandates of Or. L., § 310, his present difficulties would never have arisen. That section of our code contemplates that the sheriff's protection shall be the court's order dissolving the attachment, and not the bond. While it seems novel to conclude that an attaching creditor would be satisfied with a defectively executed undertaking, yet we are bound by the allegations of the cross-complaint. But, if we may permit our eyes to wander away from that pleading and glean some information from other parts of the record we notice that the so-called supplemental complaint does not allege any errors or mistakes in the execution of the bond; it demands judgment upon that document in its present form. It is true that the plaintiff's reply to the cross-complaint denies that it was aware of the

imperfections in the execution of the bond, but those denials cannot be infused into the cross-complaint to sustain it when attacked by the appellants' demurrer. Expressing now our conclusions upon the problem whether the appellants were proper parties to this action we are satisfied that they were not.

■ Next, we believe that the so-called supplemental complaint was not in fact a supplemental pleading. Or. L., § 108, warrants a supplemental pleading as a means of bringing into the record only facts "occurring after the former complaint." The incidents alleged by the present "supplemental complaint" occurred years before the original complaint was filed, except the entry of the order which overruled the appellants' demurrer to the cross-complaint. Apparently the plaintiff believes that that order recognized the validity of the bond, and thus warranted the supplemental pleading; but, the court's order did not render the bond valid or otherwise. Its legality depended upon the regularity of the transaction out of which it arose, and its conformity to the rules applicable to the drafting and execution of jural documents. Hence no fact of a supplemental character occurred after the original complaint was filed.

■ Further we are of the opinion that the plaintiff could not maintain its action against the defendants in the alternative. From Clark on Code Pleading, § 62, we quote:

"At common law, it was settled in accordance with the rule discussed above that parties could only be joined where their interests were joint, that parties could not be joined in the alternative. * * * But, under the codes, it has generally been held that in the absence of express statutes parties could not be joined

in the alternative, even though the plaintiff was put to more expense to settle the transaction, and even might lose out altogether by the way proof developed at the separate trials.''

We can readily appreciate the manner in which the interests of a plaintiff, who was unable, with safety to himself, to determine which of two individuals inflicted upon him a wrong, would be served if he could unite the two as defendants in the same action in alternative form. But we notice from the foregoing textbook that alternative pleading is permitted only in jurisdictions where statutes have introduced it. Apparently the courts believe that the rule which requires the pleading to employ ''plain and concise language'' precludes alternative pleadings.

We are of the opinion that the circuit court erred when it made the appellants defendants, when it sustained the cross-complaint, and when it denied the motion to strike the supplemental complaint from the files. These errors take upon themselves an additional importance when the fact is recited that the cross-complaint became a very material piece of evidence against the appellants upon the theory that they had admitted all of its recitals by failing to deny them. The only evidence offered by the plaintiff was (1) the judgment roll in its case against the Motor Service Company and (2) the bond itself. Those two documents, together with the inference that the cross-complaint, not having been denied was admitted, resulted in the judgment.

While we have held that the demurrer of the appellants to the cross-complaint should have been sustained we do not mean to hold that the new matter contained in that pleading was insufficient as a defense in behalf

of the sheriff. Quite to the contrary the answer alleged a complete defense against the cause averred in the complaint.

The situation now becomes a novelty. Error against the appellants was committed; they should never have been made defendants. This error necessitates a reversal with order to dismiss the appellants as parties defendants. Although the cause was called for trial no evidence was presented against Chrisman, the only remaining defendant. Hence the cause will be remanded with instructions to dismiss without prejudice to an action on the bond.

KELLY, J., did not participate in this opinion.