Argued January 7, affirmed June 17, petition for rehearing denied
July 27, 1976

# BAKKER, *Appellant,*

*v.*

# BAZA'R, INC., *Respondent.*

551 P2d 1269

*Rita Radich,* Portland, argued the cause for appellant. On the briefs was John Toran, Jr., Portland.

*Edward H. Warren,* Portland, argued the cause for respondent. With him on the brief were Michael A. Lehner, and Hershiser, Mitchell & Warren, Portland.

HOWELL, J.

## HOWELL, J.

Plaintiff filed an action for assault and battery and the intentional infliction of emotional distress against defendant. After a jury verdict in plaintiff's favor for general and punitive damages, the trial court conducted a supplemental hearing and found that plaintiff's cause of action for damages was barred by the Workmen's Compensation Law. Judgment was entered for defendant, and plaintiff appeals.

Plaintiff was employed by the defendant. On July 18, 1973, while at work, plaintiff was approached by a security officer who was also employed by defendant. The security officer opened a shopping bag held by plaintiff and removed some clothing. In doing so, she came in contact with plaintiff, who became extremely upset. This distress caused plaintiff to seek medical and psychiatric treatment.

On August 7, 1973, plaintiff filed a claim with the State Accident Insurance Fund. In responding to a question on the form, "How were you injured?", she stated, "Battery—Accusation of Felony or theft in presence of public and fellow employees." Approximately one month later plaintiff filed an action for damages against defendant alleging an assault and battery and an intentional infliction of emotional distress.[1]

After plaintiff's civil complaint had been filed, defendant filed an employer's report in response to plaintiff's compensation claim. In its report, her employer claimed, "There was no accident," and, as to details, stated:

> "Apparently [plaintiff] became upset when our store detective asked her to reveal the contents of a sack she was carrying out of the store."

On October 24, 1973, plaintiff's compensation claim was denied by a claims examiner in a letter which stated that plaintiff's "problem" did not arise out of,

---

[1] The latter allegation is not involved in this appeal, since the jury found in favor of plaintiff on the assault and battery count alone.

nor in the course of, plaintiff's employment with defendant. The letter also advised plaintiff that she was entitled to request a hearing if she did so within 60 days. On November 29, 1973, defendant filed an answer to plaintiff's civil complaint.

During the trial of the civil case in September, 1974, defendant's counsel advised the court that he had learned of the plaintiff's filing for workmen's compensation. After a brief discussion, the trial court advised both counsel that, if the jury returned a verdict for plaintiff, defendant could file a supplemental answer alleging workmen's compensation as a defense. Following the verdict for plaintiff, the trial court held a hearing on the supplemental answer and concluded that plaintiff was restricted to workmen's compensation.

The threshold question for decision is whether a battery was committed against plaintiff by defendant's employee. If no battery occurred, then defendant's motion for a directed verdict should have been allowed, and we need not consider plaintiff's assignments of error.[2]

The incident occurred shortly before closing time on July 18, 1973. Plaintiff had a large J.C. Penney store sack containing a pantsuit she had brought from home and some T-shirts which she had purchased from a fellow employee. Plaintiff stopped to talk to another employee when the security officer came up to plaintiff and said, "What have we got here?" or "What have we got in the sack?" According to plaintiff, the security officer had her feet between plaintiff's, touching plaintiff. She reached over plaintiff's shoulder, pulled out the top of the pantsuit and, in doing so, brushed against plaintiff. After removing part of the pantsuit,

[2]The plaintiff argues that we cannot consider whether plaintiff's evidence of a battery was insufficient because defendant has not filed a proper cross appeal. Defendant has raised the question in its brief, and it was not necessary, the defendant having received a favorable judgment, for defendant to have filed a cross appeal. *See Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972).

the security officer started to reach into the sack again. However, plaintiff pushed her hand away and removed the T-shirts, as well as the rest of the suit, and showed them to the officer. Plaintiff became extremely upset over the incident, both at the time it occurred and later. Her distress eventually caused her to secure medical treatment.

To constitute liability for a battery, the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof. 1 Harper & James, The Law of Torts 215-17, § 3.3 (1956). It is not necessary that the contact do actual physical harm — it is sufficient if the contact is offensive or insulting. Prosser, Law of Torts 36, § 9 (4th ed 1971). Therefore, on the basis of the evidence outlined above, we find that plaintiff did make out at least a prima facie case of battery. Correspondingly, defendant's motion for a directed verdict was properly denied.

Plaintiff's first assignment of error is that the trial court erred in denying plaintiff's motion to strike defendant's motion for a judgment n.o.v. or, in the alternative, for a new trial. Plaintiff argues that defendant's motion was not timely filed. However, the trial court eventually denied defendant's motion, and therefore, regardless of the merits of the plaintiff's argument, the issue is now moot.

Plaintiff's next assignment of error is that the trial court erred in allowing defendant to file a supplemental answer which alleged that plaintiff's injuries were compensable under the Workmen's Compensation Law and, therefore, that plaintiff's civil action was barred.

The circumstances surrounding the filing of the supplemental pleading were somewhat unusual. During the second day of the trial, defendant's attorney informed the court, out of the presence of the jury, that he had learned that plaintiff had previously filed a claim for the same injuries under the Workmen's Com-

pensation Law.[3] Defendant wanted the court's permission to ask about this matter during his cross-examination of the plaintiff which was about to commence. However, the matter raised was a legal defense and was not a factual matter to be considered by the jury. Therefore, after some discussion, the court decided to proceed in the following manner:

"I think that what we should do is this, that in the event that there is a plaintiff's verdict in this case, you can petition the Court to file a supplemental answer and that can be adjudicated as a separate legal defense just as we pre-adjudicate it in many of the cases."

Following the jury's verdict for plaintiff, defendant's supplemental answer was submitted to the court and filed along with a memorandum of law in support thereof. Subsequently, a hearing was held on its merits, and the trial court eventually ruled in defendant's favor.

Plaintiff now argues that the trial court erred in permitting defendant to file its supplemental answer. Specifically, plaintiff contends that the facts alleged in the supplemental pleading did not arise after the prior pleadings had been filed and were not newly discovered by the defendant employer. Plaintiff also argues that no motion or petition for leave to file the supplemental answer was ever made to the trial court and, therefore, that the court's discretion to allow the filing of the supplemental answer was never properly invoked.

Plaintiff's counsel did not object to this method of proceeding on any grounds during the trial when this

[3] "MR. ACKER: Your Honor, what I wanted to bring up is, I have a problem relating to some questions I intend to ask the plaintiff, but I thought I should make Court and counsel aware of the questions.

"The question concerns the fact that it's been, it has come to my attention that the plaintiff in this case has filed a Workmen's Compensation Claim for this same injury. Now, I don't have any, it wasn't covered on deposition and I don't, but my intention would be to simply ask the plaintiff if, in fact, that claim has been made, the reason being that if, in fact, a claim has been made, then I would then be asserting this as a defense on the grounds that is an exclusive remedy under the Workmen's Compensation Act."

procedure was first considered and adopted by the trial court. Nor did he object during the subsequent hearing on the supplemental answer, except to note that there was a question as to the timeliness of the supplemental answer.[4] Moreover, plaintiff did not move to strike the supplemental answer on the basis of the timeliness issue. Under such circumstances, we would be justified in declining to consider these alleged procedural defects any further on the grounds that plaintiff has not adequately protected her rights on appeal. *See State v. Hickmann,* 273 Or 358, 359-60, 540 P2d 1406 (1975); *Wood Ind'l Corp. v. Rose,* 271 Or 103, 530 P2d 1245 (1975); *Crawford v. Jackson,* 252 Or 552, 451 P2d 115 (1969).

However, we also note that on at least two previous occasions defendant employers have been allowed to raise the exclusive remedy provision of the Workmen's Compensation Law in the form of a supplemental answer.[5] Such a procedure closely parallels that specifically provided for in ORS 656.595(3) for raising similar challenges to an individual's right to bring a civil action against a third party for work-connected injuries.[6] It is also in accord with our decision in *Bibby v. Hillstrom,* 260 Or 367, 490 P2d 161 (1971). In *Bibby* we held that, in order to avoid prejudice to the plain-

---

[4] This issue was raised by way of argument during the supplemental proceeding:

"MR. TORAN: Just with respect to the Supplemental Answer, Your Honor, first of all, we think that the Answer comes a bit late in the trial. I understand it was, that the issue was raised in the course of trial, but I believe it was raised at the time the defendant was putting on his own case. It seems to me there is a real question of timeliness in this case.

"With respect to the Supplemental Answer, itself, I do not believe it alleges sufficient facts to raise any issue as to whether or not there was unprovoked aggression or not. I think the Answer, itself, is insufficient to establish a defense."

[5] *See Cornelison v. Seabold,* 254 Or 401, 460 P2d 1009 (1969); *Bandy v. Norris, Beggs & Simpson,* 222 Or 1, 342 P2d 839 (1959), 351 P2d 445 (1960).

[6] ORS 656.595(3) provides as follows:

"A challenge of the right to bring such third party action shall be made by supplemental pleadings only and such challenge shall be determined by the court as a matter of law."

tiff's case in a civil action for assault and battery, the defendant's right to offset a compensation award for the same injuries should be litigated

> "by the use of supplemental pleadings after a trial by the jury of the issues of defendant's liability and the extent, if any, of plaintiff's total damages. * * * In a situation where plaintiff's claim for compensation has not been finally disposed of at the time of trial, the matter of the ultimate judgment must necessarily be held in abeyance for subsequent determination by the court since it could not be determined by the jury." 260 Or at 370-71.

■ Moreover, considering the particular circumstances under which the applicability of the workmen's compensation bar was raised in this case, the method of procedure adopted by the trial court appears to have been at least as appropriate as any other available method of proceeding. Since the jury had been selected and the testimony had already begun, the court could have recessed the case, held a hearing on the supplemental defense or, as the court did, postpone the hearing on the supplemental defense until after a verdict. Since the necessity of any hearing at all would have been obviated by a verdict for the defendant, we do not find that the trial court abused its discretion in adopting the method followed in this case for adjudicating the issues raised by the defendant in its supplemental pleading. *Cf. Bibby v. Hillstrom, supra:*

> "It is our opinion that any claim of offset for money paid to plaintiff under the benefits of the Act must be determined by the trial court with the use of supplemental pleadings and proceedings, the exact character of which must be tailored by the trial judge to the circumstances involved." 260 Or at 372.

■. It is also significant that in this case plaintiff does not appear to have suffered any significant prejudice as a result of defendant's delay in asserting the defense raised in the supplemental answer. Similarly, plaintiff is not in a position to claim that she was unfairly surprised by the delay in asserting the supplemental defense since she herself was responsible

for initiating her compensation claim under the Workmen's Compensation Law.

Plaintiff also argues that the trial court erred in holding that plaintiff's cause of action was barred by the workmen's compensation defense raised by the supplemental answer. Plaintiff asserts that her remedies are not restricted by the Workmen's Compensation Law because this case falls within the statutory exception appearing in ORS 656.156(2). That statute provides:

> "If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, the widow, widower, child or dependent of the workman may take under ORS 656.001 to 656.794, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes."

Apparently, plaintiff does not contend that her injury was the result of the "deliberate intention" of her employer "to produce such injury," but only that her employer ratified the intentional tort of the store officer. Although the trial court did find that the defendant employer had ratified the actions of the store officer, the court apparently concluded that such a ratification was insufficient to bring this case within the statutory exception set forth above. We agree with this conclusion.

This court has consistently adhered to a strict construction of this statutory exception. *See, e.g., Caline v. Maede,* 239 Or 239, 396 P2d 694 (1964); *Heikkila v. Ewen Transfer Co.,* 135 Or 631, 297 P 373 (1931); *Jenkins v. Carman Mfg. Co.,* 79 Or 448, 155 P 703 (1916):

> "We think by the words 'deliberate intention to produce the injury' that the lawmakers meant to imply that the employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross." 79 Or at 453-54.

It should be apparent from the facts in this case that plaintiff's injury did not result from the "deliberate intention" of her employer as that term has been interpreted by this court. In this case there is no evidence that the defendant employer ever intended to injure anyone. Moreover, unless the injury "results" from the employer's conduct, the injured employee's cause of action does not fall within the statutory exception set forth in ORS 656.156(2). It is difficult to see how any injury could be said to result from a subsequent ratification of the tortious conduct which produced it. Similarly, a subsequent ratification of the tortious conduct cannot evidence a "deliberate intention * * * *to produce* such injury," since, necessarily, the ratification occurs after the injury has been sustained. Thus, we conclude that plaintiff has not brought herself within the statutory exception set forth in ORS 656.156(2).[7]

Finally, plaintiff contends that the defendant should have been estopped from asserting the plaintiff's injuries were compensable, and thereby raising the bar of the Workmen's Compensation Law, because, when previously responding to plaintiff's workmen's compensation claim, defendant took the position that plaintiff had not suffered a compensable injury. Plaintiff cites *Johnson v. Dave's Auto Center,* 257 Or 34, 476 P2d 190 (1970), for this proposition. However, although the issue which plaintiff now raises was argued in that case, the question was not resolved by that decision. *See* 257 Or at 48.

■ In this case, as in *Johnson,* there had been no final adjudication of the compensation claim prior to the trial of the civil case. In *Johnson,* the claim had been

---

[7] *See also* 2A Larson, The Law of Workmen's Compensation Law § 68.21 (1976):

"* * * Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system."

settled in accordance with the provisions of ORS 656.289(4). In this case it was stipulated at trial that although plaintiff's compensation claim was initially denied by defendant's insurance carrier, a hearing on the matter had been requested and was still pending. Therefore, the disposition of plaintiff's compensation claim was not yet final at the time the civil action was tried. Moreover, the record discloses that plaintiff filed her civil action before defendant took any action to contest her compensation claim. Thus, plaintiff would not seem to be in a position to assert that she either abandoned her compensation claim or initiated this civil action in reliance on defendant's position that she had not suffered a compensable injury. Under these circumstances, we do not believe that there is any evidence that plaintiff changed her position or suffered any detriment in reliance on defendant's actions in contesting the compensability of her claim. *See Wilford v. Sigmund Eisner Co.,* 13 NJ Super 27, 80 A2d 222 (1951); *Ham v. Gouge,* 214 Pa Super 423, 257 A2d 650 (1969).

■ We also note that defendant's initial position with respect to plaintiff's compensation claim is not necessarily inconsistent with the position defendant took at the trial of the civil action. As evidenced by the "Workmen's and Employer's Report of Occupational Injury or Disease" which was filed in response to plaintiff's compensation claim, defendant's original position was that plaintiff had not suffered a compensable injury because "there was no accident." Defendant further explained this position on the same form: "Apparently she became upset when our store detective asked her to reveal the contents of a sack she was carrying out of the store." These statements are not inconsistent with the position defendant took at the trial which was, essentially, that plaintiff had not suffered either a battery or the intentional infliction of mental distress. Nor are they inconsistent with defendant's supplemental answer which alleged that any injuries which plaintiff suffered arose out of her employment and

were compensable under Workmen's Compensation. Although we recognize that defendant's supplemental answer is inconsistent with the position taken by defendant's compensation carrier when denying plaintiff's compensation claim,[8] we do not believe that the position taken by the compensation carrier in a proceeding which was not yet finalized should bind the defendant in a subsequent action to determine defendant's civil liability. Therefore, we find no basis in this case for the application of any form of estoppel against the defendant employer. *Compare Wilford v. Sigmund Eisner Co., supra,* and *Ham v. Gouge, supra, with Sunlight Coal Co. v. Floyd,* 233 Ky 702, 26 SW2d 530 (1930), and *Welser v. Ealer,* 317 Pa 182, 176 A 429 (1935). *Cf. Hansen v. Hayes,* 175 Or 358, 154 P2d 202 (1944); *Harrell v. Horton,* 401 P2d 461 (Okla 1965).[9]

In summary, we conclude that the procedures followed by the trial court in this case were proper. We also conclude that the court was correct in determining that plaintiff's injuries were compensable and that plaintiff is therefore restricted to the remedies provided by the Workmen's Compensation Law.

Affirmed.

**TONGUE, J.,** dissenting.

The majority has approved a procedure under which an employer covered by the Workmen's Com-

---

[8]The letter from the compensation carrier denying the claim contained the following:

"Our investigation reveals that any problem from which you may now be suffering did not arise out of, nor in the course of, your employment with Bazar, Inc. Therefore, on behalf of your employer, Bazar, Inc., and their insurance carrier, Industrial Indemnity Company, your claim is respectfully denied."

[9]Plaintiff also contends that the first judgment was set aside after the court's power to make such an order had expired. However, the hearing was held and the first judgment was set aside within two months of the time it was entered. We believe that this constitutes a reasonable time after the entry of the initial judgment. *See Braat v. Andrews,* 266 Or 537, 514 P2d 540 (1973); *Koennecke v. Koennecke,* 239 Or 274, 397 P2d 203 (1964). Therefore, we find no abuse of discretion. *See Bailey v. Steele,* 263 Or 399, 502 P2d 586 (1972); *Morphet v. Morphet,* 263 Or 311, 502 P2d 255 (1972). *See also* ORS 1.055.

[ 256 ]

pensation Act may deny a claim by an employee under that Act, gamble upon the outcome of an action by the employee for damages and wait until after both the verdict and judgment in that action before asserting, by "Supplemental Answer," the contention that the employee was, after all, covered by the Act and entitled to its benefits. To the plaintiff, as a lay person, stripped of the benefits of a jury verdict won after a fair trial, this must indeed appear to be a technical outrage, particularly when the procedure by which it was accomplished was suggested and ordered by what must appear to her to be the overactive intervention by a trial judge in the aid of her employer's attorney.

This is a far different case than *Cole v. Zidell Explorations, Inc.,* 275 Or 317, 550 P2d 1194 (1976), decided this day, in which the same trial court, although allowing a defendant to file a supplemental answer in a "third party" case as expressly provided by ORS 656.595(3), did so *at the beginning of the trial* and then proceeded to hear and decide the issues raised by that defense *before trial* of the issues raised by plaintiff's complaint for damages.

Consider the chronological facts of this case.

*July 18, 1973.* Plaintiff, an employee of defendant, was assaulted by one of defendant's "security officers," as found by the jury. At that time defendant was a "covered" employer under the Workmen's Compensation Act, but was a "direct responsibility" employer.[1]

*August 23, 1973.* Plaintiff filed a claim for workmen's compensation on a form previously secured by her from defendant.

*September 5, 1973.* Plaintiff's attorney filed an action in court for damages against her employer, alleging that the acts of its "security officer" were "intentional,

---

[1] ORS 656.005(12) defines "direct responsibility employers" to include both "self-insured employers" and "carrier-insured employers."

[ 257 ]

malicious and done with an intent to injure and damage" plaintiff.[2]

*October 24, 1973.* Defendant, through its compensation insurance carrier, rejected plaintiff's claim for workmen's compensation on the express ground that "any problem from which you may now be suffering did not arise out of, nor in the course, of your employment with Bazar, Inc."[3] A copy of that "response" was mailed to both plaintiff's attorney and to defendant as her employer.

*December 5, 1973.* An answer was then filed on behalf of defendant in the form of a general denial, with no "Supplemental Answer," affirmative defense or plea in abatement upon the ground that plaintiff had a remedy under the Workmen's Compensation Act (which defendant had denied), much less that such a remedy was her exclusive remedy or that she was barred from bringing an action at law by her election to file a claim for workmen's compensation.

*September 4, 1974.* The case was set for trial on plaintiff's complaint. No preliminary hearing was requested by defendant to determine whether plaintiff's exclusive remedy was under the Workmen's Compensation Act. At the time of trial and prior to the selection of a jury, defendant requested leave to file an amended answer alleging an affirmative defense of "justification." That request was allowed. No contention was made by defendant that plaintiff's sole remedy was by claim for workmen's compensation or

---

[2] ORS 656.156(2) provides that if an injury to a workman results from the "deliberate intention of his employer to produce such injury," the workman may both take compensation under the Workmen's Compensation Act and also sue in court for damages "over" the amount payable under the Act.

[3] According to the majority, plaintiff's claim for compensation was denied "by a claims examiner." Under the terms of ORS 656.262(1) and 656.005(12) "direct responsibility employers," are themselves "responsible" for the processing of claims by employees for workmen's compensation and for the payment of compensation to their employees. Thus, the rejection of this claim by defendant's insurance carrier was, in effect, a rejection of the claim by defendant or, at least, a rejection of that claim on its behalf, acting through its insurance carrier as its agent.

that her action was barred by her election to seek such a remedy.

*September 5, 1974.* On the second day of trial and upon the completion of plaintiff's direct testimony defendant's attorney informed the court of "some questions I intend to ask the plaintiff"; that "it has come to my attention that plaintiff in this case has filed a Workmen's Compensation Claim for this same injury"; that "if, in fact, a claim has been made, then I would be asserting this as a defense on the grounds that this is an exclusive remedy * * *."[4]

Plaintiff then stipulated that such a claim had been filed and denied, but contended that defendant "would have to plead it"; that the claim forms were obtained from defendant and it had been served with a notice of the claim, with the result that it could not claim "surprise."

The trial court, however, ruled that "He can't plead it unless he knows about it" and said to defendant's counsel:

"Well, you simply didn't know about it. Is that correct?"

Defendant's counsel, in response to that direct question, said only that "I have never seen any of *these forms* that he has mentioned. None of them have been directed to me." Defendant's attorney did not deny knowledge that such a claim had been filed, much less that defendant was a "covered" employer, under the Workmen's Compensation Act, so as to provide an "exclusive remedy" for claims covered by that Act. And, in any event, defendant's attorney could not properly claim ignorance of any of these facts because they were all known to his client, the defendant.

---

[4]Thus, defendant's position at that time appeared to be to the effect that because plaintiff had previously filed such a claim and then filed an action for damages, she was barred *for that reason* (i.e., by election of remedies) from an *action for damages*. There is no requirement that such a defense be pleaded by supplemental answer and decided in advance of trial. This is a different defense than the defense subsequently pleaded by supplemental answer. See note 7, *infra.*

The trial judge then immediately made the following ruling:

"I think that what we should do is this, that *in the event that there is a plaintiff's verdict in this case, you can petition the Court to file a supplemental answer* and that can be adjudicated as a separate legal defense just as we pre-adjudicate it in many of the cases. I think, but we will keep it clear out of this lawsuit. It is neither admissible as far as the factual thing that this jury is concerned, nor does it represent a collateral source for offset. That's the way we will handle it. * * *."[5] (Emphasis added)

*September 5, 6 and 9, 1974.* The trial before the jury then proceeded for the better part of three more days, including the calling by plaintiff of 10 more witnesses, two of whom were medical witnesses, and concluding with a jury verdict in favor of plaintiff for $25,000 in general damages and $7,500 in punitive damages. No petition was then filed by defendant for leave to file a supplemental answer, in accordance with the ruling by the trial judge that such a petition be filed "in the event that there is a plaintiff's verdict.

*September 16, 1974.* Seven days after the jury verdict the trial court signed and entered judgment upon the verdict in favor of plaintiff.

*October 17, 1974.* Thirty days after entry of the judgment, defendant filed a "Supplemental Answer."[6] That pleading alleged, for the first time that:

"* * * [O]n July 18, 1973, the defendant was a con-

---

[5] According to the majority, the trial court advised "counsel that if there was a verdict for plaintiff" defendant could file a "supplemental answer" and that plaintiff did not object at that time. It appears from the record, however, that the ruling of the trial judge was that in such an event defendant could then "petition the court to file a supplemental answer." Thus, aside from the fact that this ruling was made in such a manner as to foreclose objections at that time, it was implicit that plaintiff's opportunity to object to the filing of a supplemental complaint was reserved until such a time as defendant "*petition[ed] the court* to file a supplemental answer."

[6] According to the majority, defendant's Supplemental Answer was filed "following the jury's verdict." Thus, it does not clearly appear from the majority opinion (except from a final footnote) that this "Supplemental Answer" was not filed until after the entry of a judgment on the verdict.

tributing employer operating under the Workmen's Compensation Law of the State of Oregon. On July 18, 1973, plaintiff was an employee of this defendant and the injuries complained of by the plaintiff occurred *while she was acting in the course and scope of her employment* on premises occupied by the defendant. *The injuries complained of by plaintiff are compensible [sic] under the Workmen's Compensation Law of Oregon.* The plaintiff is, therefore, barred in the present action." (Emphasis added)

Thus, the position taken then by defendant was directly contrary to the position previously taken by defendant that plaintiff's injuries were not compensable under the Workmen's Compensation Law because they "did not arise out of, or in the course of [her] employment."[7]

*October 28, 1974.* A hearing was held on defendant's motion for a judgment n.o.v. or for a new trial. At that hearing testimony and exhibits were offered by defendant in support of its supplemental answer. Defendant's attorney also requested the trial court to consider testimony offered at the jury trial and that request was also allowed. Plaintiff's attorney then objected to the supplemental answer upon the ground, among others, that "* * * there is a real question of timeliness * * *."[8]

*November 18, 1974.* The trial court vacated the former judgment and entered a new judgment "in favor of

---

[7]It will also be noted from these allegations that this was not the same as the defense which defendant apparently sought to raise at the time of trial upon cross-examination of plaintiff. See note 4, *supra*. A motion for judgment n.o.v. for a new trial, on other grounds, was filed at the same time.

[8]The majority says that although plaintiff raised the question of "timeliness," her attorney did not then move to strike the supplemental answer and that, as a result, this court would be "justified in declining to consider these procedural defects any further on the grounds that plaintiff has not adequately protected her rights on appeal." The majority then, however, proceeds to consider the merits of the case, and properly so, because plaintiff did specifically object to the supplemental answer on the ground of "timeliness," thus raising that basic question for decision.

defendant" based upon the following "findings of fact and conclusions of law":

"1. Plaintiff, Hendrika Bakker, was injured while acting in the course and scope of her employment;

"2. Plaintiff sustained damages as set out by the jury verdict;

"3. The assault and battery on the plaintiff was committed by an employee of the defendant, whose actions were ratified by the employer;

"4. The employer, defendant Baza'r, Inc. was at all times herein a contributing employer to the Workmen's Compensation Law of the State of Oregon and plaintiff's injuries were compensable under said law. The plaintiff is therefore barred from the prosecution of this action against her employer."[9]

Thus, the trial court found the facts to be directly contrary to the original position taken by defendant, that plaintiff's injuries were *not* compensable under the Workmen's Compensation Act because they "did *not* arise out of, nor in the course of, [her] employment."

By this unique procedure, as initiated and ordered by the trial court and approved by the majority of this court, an employer is now permitted not only to play "cat and mouse" with his employees, but to "have his cake and also eat it." Thus, when an employee first files a claim for workmen's compensation, that claim may be denied by the employer, acting through his compensation carrier, on the ground that the injury did *not* arise out of the course of employment. And when the employee then files an action for damages the employer need not then take a position whether the employee's exclusive remedy is for workmen's compensation, but may delay taking a position on that question and speculate upon the result of that action.

---

[9] No finding was reached upon the question whether plaintiff's injury was "intentional" or was the result of an "unprovoked aggression," as also contended by plaintiff.

If there is a defendant's verdict, the employer and his compensation carrier may escape even liability for workmen's compensation benefits. But if the verdict is in favor of the employee, and after putting the employee to the expense of a trial, including medical expert witnesses, and after what then becomes a waste of the time of a trial court and 12 jurors, the employer can then come in, *even after the entry of judgment,* and contend that the employee's injury arose out of the course of his employment and that his exclusive remedy is under the Workmen's Compensation Act—a position directly contrary to the previous position of the employer and its compensation carrier. Even then the employer may escape liability for payment of workmen's compensation benefits in the event that the employee, upon denial of his original claim, did not appeal from that denial, but instead proceeded with an action for damages against his employer.[10]

Such a procedure and such a result must not only be shocking to a layman's sense of justice, but it is a procedure and result that is contrary to well established rules of law, to good and efficient judicial administration and, in particular, to the very purpose of the Workmen's Compensation Act to protect employees, employers and the public from the expense and delay incident to litigation.

1. *A supplemental answer was improper in this case.*

ORS 16.360 relative to supplemental pleadings provides:

> "The plaintiff and defendant, respectively, may be allowed on motion to make a supplemental complaint, answer or reply, alleging facts material to the case, *occurring after the former complaint, answer or reply.*"
> (Emphasis added)

---

[10] ORS 656.319 provides that a claim for workmen's compensation "shall not be enforceable" unless a request is made by the employee within a specified period of time after being notified of the denial of his claim, subject to exceptions as provided by ORS 656.265(4).

Defendant's supplemental answer alleged only facts relating to plaintiff's employment prior to the filing of the complaint and alleged no facts "occurring after" defendant's former answer. It follows that the trial court erred when it suggested and ordered that defendant be permitted to file a supplemental answer alleging such facts.[11]

It is true, as stated by the majority, that ORS 656.595(3) relating to actions by employees against *third parties* for work-connected injuries provides that:

> "A challenge of the right to bring such third party action shall be made by supplemental pleadings only and such challenge shall be determined by the court as a matter of law."

It is only because of the express provisions of that statute, however, that such a practice is permitted even in third party actions and this is not such an action. It follows, that under the terms of ORS 16.360 the trial court was in error in ruling, on its own initiative, that defendant could raise by supplemental answer the contention that plaintiff's exclusive remedy was under the Workmen's Compensation Act, wholly aside from the correctness of its ruling that defendant might wait until after both the verdict and judgment to file such a pleading and then have a separate trial on the issues raised by it.[12]

---

[11]*Continental Guar. Corp. v. Chrisman,* 134 Or 524, 533, 294 P 596 (1930); *Todd v. Occidental Life Ins. Co.,* 208 Or 634, 657, 295 P2d 870, 303 P2d 492 (1956); *Hughes, Trustee v. Honeyman, Executrix,* 186 Or 616, 623, 208 P2d 355 (1949).

[12]Even if the "Supplemental Answer" in this case be not considered as a supplemental answer, within the strict meaning of that term, so as to be improper under ORS 16.360, but to be in the nature of a separate affirmative defense raising the "exclusive coverage" issue, that pleading must then be considered as an amended pleading.

It is elementary that amended pleadings which add new causes of action or new defenses will not be permitted after the commencement of trial. ORS 16.390 expressly limits amended pleadings to those which do "not substantially change the cause of action or defense." See also *Carna-*

2. *Defendant's "exclusive remedy" contention, whether pleaded by supplemental answer or affirmative defense, must have been pleaded and decided prior to the trial on the merits.*

Even if a supplemental answer was a proper manner of raising defendant's contention that plaintiff's exclusive remedy was under provisions of the Workmen's Compensation Act, in reliance upon ORS 656.595(3), it is clear that such a defense must have been pleaded, and decided prior to the trial on the merits in this case and, at the least, prior to the entry of judgment.

The majority says that this court has previously allowed defendant employers to "raise the exclusive remedy provision of the Workmen's Compensation Law" by a "supplemental answer," (citing *Cornelison v. Seabold,* 254 Or 401, 460 P2d 1009 (1969); and *Bandy v. Norris, Beggs & Simpson,* 222 Or 1, 342 P2d 839 (1959), 351 P2d 445 (1960), and that this procedure is also "in accord" with *Bibby v. Hillstrom,* 260 Or 367, 490 P2d 161 (1971). Based upon these authorities, the majority concludes that the trial court could not only permit the filing of the supplemental answer in this case, but permit the filing of such a pleading after the completion of the trial and the entry of judgment.

*Cornelison* and *Bandy* both involved alleged "third party" defendants who were not the employers of the plaintiffs. In "third party" actions, however, supplemental answers are proper *only* because they are speci-

han Mfg. Co. v. Beebe-Bowles Co., 80 Or 124, 130, 156 P 584 (1916), reversing a trial court for allowing the filing of an amended pleading during trial, in violation of this statute. Also, ORS 16.390 expressly limits all amended pleadings to those filed *"before the cause is submitted."* (Emphasis added)

It follows that the trial judge was clearly in error in both suggesting and directing defendant to file what was designated by him as a "Supplemental Answer," but which in reality was an amended pleading alleging a completely new defense and in allowing such a pleading to be filed not only after "the cause [was] submitted" to the jury, but 30 days after the entry of its verdict and after the entry of the original judgment.

fically authorized by ORS 656.595(3), for use in third party actions, as previously noted. Of equal importance is the fact that in neither of such cases was the "Supplemental Answer" filed after the trial and judgment in the action for damages, as in this case.

In *Bibby* the question was not, as in this case, whether plaintiff would have a remedy under the Workmen's Compensation Act and, if so, whether that remedy was exclusive, as a defense to an action for damages. Instead, the question in *Bibby* was how to properly allow defendant an *offset* for compensation benefits previously paid to that plaintiff. The plaintiff in *Bibby* had been injured as the result of an intentional assault and battery by her employer, acting personally, so as to give that plaintiff the right to sue "for damages over the amount payable" under the workmen's compensation statute, by the express terms of ORS 656.156(2). It is one thing to allow a judge to make an offset as provided by that statute after the return of a jury verdict assessing the amount of total damages, but before the entry of judgment, as in *Bibby.* It is quite another thing, however, to allow defendant to file a "Supplemental Answer" alleging an "exclusive remedy" under the Workmen's Compensation Act as a complete defense, not only after the completion of a trial, but after the entry of a judgment on the verdict, as in this case.

There is no precedent in our previous decisions for such a practice. It is also a practice which is directly contrary to both the purposes of the Workmen's Compensation Act and to other specific provisions of that Act. We have previously recognized that the purpose of the Oregon compensation law was to protect both employees and employers against "the expense and delay incident to litigation." *Bigby v. Pelican Bay Lbr. Co.,* 173 Or 682, 692, 147 P2d 199 (1944), citing ORS 656.004. Indeed, an equally important purpose of this Act is to minimize the cost to the public of maintaining courts and juries to determine questions of legal liabil-

ity for injuries subject to compensation under the Act.[13]

Consistent with that purpose, it is specifically provided by ORS 656.384 that if a "contributing employer" subject to the Act (i.e., one who provides coverage with the State Industrial Accident Fund) is made defendant in any personal injury litigation by one of his employees, the Workmen's Compensation Board "shall request the Attorney General to defend the employer" and that upon the filing by the attorney general of an answer "alleging the defense that the plaintiff's sole remedy is under the Workmen's Compensation Law"

> "* * * the filing of such answer shall suspend all further proceedings in such litigation other than the trial of the defense that the plaintiff's right of recovery is under the Workmen's Compensation Law, until such defense has been finally determined by the court. * * *."

Upon the subsequent amendment of the Act to provide that an employer has the option to be a "direct responsibility employer" (i.e., to provide coverage through private insurance or to be "self-insured") it was provided by ORS 656.403(2) that:

> "The claims of subject workmen and their beneficiaries resulting from injuries while employed by a direct responsibility employer shall be handled in the manner provided by this chapter. [Which includes ORS 656.384] * * *."

Thus, it would appear to be clear that the intent of the legislature in enacting these provisions was that when a covered employer is sued by an employee and

---

[13] ORS 656.004 provides in part as follows:

"* * * [U]nder the rules of the common law and the provisions of the statutes now in force an unequal burden is cast upon its citizens, and that in determining the responsibility of the employer on account of injuries sustained by his workmen, *a great and unnecessary cost is now incurred in litigation which cost is divided between the workmen, the employers and the taxpayers, who provide the public funds, without any corresponding benefit, to maintain courts and juries to determine the question of responsibility under the law as it now exists, * * *.*"

contends that the exclusive remedy of the employee is for compensation under the Act, that question must be raised by or on behalf of the employer and decided by the court in advance of the trial of the action for damages, so as to protect both employer, employee and the public against the expense (as well as the delay) of the litigation of such an action.

Consistent with that purpose and intent, it is to be noted that ORS 656.595(3) (the statute providing for the raising of that same defense in third party actions may be raised by supplemental answer), does not expressly provide that this same question in such cases shall be decided prior to trial of the third party action. Yet in *Cornelison v. Seabold, supra* (one of the cases relied upon by the majority), this court held, quoting (at 464) from another case, that:

"'* * * In such cases it is the clear intent of ORS 656.324(3) [now ORS 656.595(3)] that the trial court resolve the questions presented by supplemental answer *before the commencement of the jury trial,* if any, upon the issues of negligence and damages.'" (Emphasis added)

In addition, it would appear that the trial court in this case had no power to permit the filing of a pleading raising a new defense after completion of the trial and after the entry not only of the verdict but of the judgment on the verdict. See *Golden Rod Milling Co. v. Connell,* 84 Or 551, 164 P 588 (1917), holding, although under different facts, that the trial court in that case had "no power to permit" the filing of an amended answer alleging a new defense after the completion of the trial in that case.

For these reasons and based upon these authorities, I am of the firm opinion that even if the trial court could properly permit defendant to plead the "exclusive remedy" defense by supplemental answer, this court cannot properly authorize a trial court to permit the filing of such a pleading after the completion of the trial and after the entry of judgment. And even if the

trial court had any power or discretion to do so, I am of the firm opinion that any such discretion was abused by permitting the filing of such a pleading after the completion of trial and entry of judgment because to authorize a trial court to do so, as the majority has done in this case, is directly contrary not only to the provisions of the Oregon Workmen's Compensation Act, but to the express purpose of that Act to protect employees, employers and the public against the expense of needless litigation.

3. *Absence of surprise or prejudice, even if proved, does not justify the filing of the supplemental answer after the entry of judgment.*

The majority says that plaintiff was not prejudiced as a result of the delay in asserting the defense raised in the supplemental answer.

In my opinion, however, any absence of surprise or prejudice did not confer power on the trial court to direct and order the defendant to file the supplemental answer in this case, much less to permit its filing after entry of judgment and to set aside the judgment based upon such a pleading. In that regard, it should again be noted that the intent and purpose of the Workmen's Compensation Act, including the provisions discussed above, is not only to protect the litigants against the expense and delay of litigation, but to save the public the expense resulting from the time devoted by trial judges, juries, and court attendants to lengthy litigation, including jury trials, in cases subject to the provisions of that Act.

Indeed, as a matter of good and efficient court administration alone, if for no other reason, the practice which the majority today has approved is a bad practice and one which should not be condoned, regardless of "surprise" or "prejudice" to the plaintiff.

As for the contention by the majority that plaintiff cannot properly claim "surprise" because she herself initiated the claim for compensation, it should also be

noted that defendant's contention of "exclusive remedy" is not based upon that claim, but upon the facts of plaintiff's employment, regardless of whether or not she had made such a claim. Moreover, once that claim was denied by the defendant, plaintiff was entitled to proceed with the trial of her case on the assumption that defendant meant what it said when it then took the position that she had no remedy under the Act.

As for the further contention by the majority that plaintiff suffered no prejudice as a result of the delay in asserting the defense raised in the supplemental answer, it should suffice to point out again that plaintiff clearly suffered prejudice as a result of that delay in that she was required to undergo the expense of a lengthy trial, including the expert witness fees of two doctors. Had the "exclusive remedy" defense been properly raised and decided prior to trial plaintiff would not have been required to incur that substantial expense.

For these reasons, I also believe that the majority is incorrect in its attempt to justify its holding upon the ground that plaintiff suffered no "prejudice" as a result of the ruling by the trial court that defendant might file its supplemental answer after the verdict and judgment.

4. *After first denying plaintiff's claim for compensation under the Workmen's Compensation Act, defendant could not properly contend that plaintiff's "exclusive remedy" was under that Act.*

In this case, as previously stated, defendant first denied plaintiff's claim for benefits under the Workmen's Compensation Act upon the ground that her injury was *not* in the course and scope of her employment. This was done after knowledge that plaintiff had also filed an action for damages. Defendant then waited until after the entry of a verdict and judgment in that case and then filed a supplemental answer con-

[ 270 ]

tending that plaintiff's injury *was* in the course and scope of her employment and that those injuries "are compensible [sic] under the Workmen's Compensation Law."

The general and well-established rule is that a party who has assumed one position by interposing one defense in one proceeding may not thereafter assume a contrary or inconsistent position by interposing in a subsequent proceeding a defense which is contrary to or inconsistent with its defense in the previous proceeding.[14] The majority does not deny that rule, but contends that: (a) this defendant did not take inconsistent positions; (b) plaintiff did not act in reliance upon defendant's previous position; and (c) plaintiff suffered no prejudice as the result of any such reliance.

First of all, it again is my opinion that neither the absence of any inconsistency in defendant's positions nor the absence of reliance and prejudice as a result of any such inconsistency can justify the filing of a supplemental answer raising the "exclusive remedy" defense after the verdict and judgment when that defense should have been raised in advance of trial in order that it might be decided at that time, so as to avoid the expense and delay of a prolonged jury trial— all for reasons previously stated. The inconsistency of defendant's positions does, however, provide an additional reason to require such a result. A party may not contend that unless the opposing party can demons-

---

[14]For cases applying this rule under similar facts, see *Welser v. Ealer,* 317 Pa 182, 176 A 429, 430 (1935); *Besonen v. Campbell,* 243 Mich 209, 220 NW 301, 302-03, (1928); *Buehler v. Philadelphia & R. Ry. Co.,* 280 Pa 92, 124 A 325, 326 (1924). See also *Queenan v. Mays,* 90 F2d 525, 533 (10th Cir 1937), *cert denied,* 302 US 724 (1937). Cf. *Scarano v. Central R. Co. of New Jersey,* 203 F2d 510 (3d Cir 1953); *Sands v. Union Pacific Railroad Company,* 148 F Supp 422, 427-28 (D Or 1956); *Mueller v. Garske,* 1 Wash App 406, 461 P2d 886, 888 (1969); *Ward Cook, Inc. v. Davenport,* 243 Or 301, 310-11, 413 P2d 387 (1966); *Hodkin v. Perry,* 88 So 2d 139, 140 (Fla 1956); *City of Boston v. Nielsen,* 305 Mass 429, 26 NE2d 366 (1940). See generally 2 Freeman on Judgments 1329-332, § 631 (1925). But see *Harrell v. Horton,* 401 P2d 461 (Okla 1965).

trate reliance and prejudice he has a right to take inconsistent positions.[15]

In this case, however, there were not only inconsistent positions, but also reliance and prejudice.

(a) *The positions taken by defendant were inconsistent.*

The majority says that defendant's "initial position" in response to plaintiff's claim for compensation was that she had not suffered a compensable injury because "there was no accident" and that she only "became upset when our store detective asked her to reveal the contents of a sack" and that "*these statements*" are not inconsistent with defendant's subsequent position on trial that "plaintiff had not suffered either a battery or the intentional infliction of mental distress" or with the position that any injuries were compensable under the Act.

With all due respect, I am of the firm opinion that this holding completely overlooks the provisions of the Act, ORS 656.262(1) and ORS 656.005(12), to the effect that "direct responsibility employers" (which includes both "self-insured" and "carrier-insured" employers) are themselves "responsible" for "the processing of claims and providing compensation" for injured employees.

It follows from these provisions that the insurance carrier of a "direct responsibility employer" is the agent of the employer, who is responsible for its conduct, and that when defendant's insurance carrier denied plaintiff's claim, and did so upon the ground that "any problem from which you may be suffering

---

[15]The rule against taking inconsistent positions in judicial proceedings has been referred to as a rule of "judicial estoppel." Because, however, the rule is based upon reasons of judicial administration, reliance and prejudice are not required, as under the rule of equitable estoppel. See *Sullivan v. McCallum,* 231 So 2d 801, 803 (Miss 1970); *Coleman v. Southern Pacific Company,* 141 Cal App 2d 121, 296 P2d 386, 392 (1956); *State v. City of Knoxville,* 33 Tenn App 622, 232 SW2d 564, 567 (1950); *Southern Coal & Iron Co. v. Schwoon,* 145 Tenn 191, 239 SW 398, 409-10 (1921).

did not arise out of, nor in the course of, your employment," that denial, and the basis for it, must be considered as a denial of the claim by defendant and a statement of defendant's position as to the reason and basis for denial of the claim.

That position was clearly inconsistent with the position subsequently taken by defendant in its "Supplemental Answer" that:

> "[T]he injuries complained of by plaintiff occurred while she was acting in the course and scope of her employment * * * the injuries complained of by plaintiff are compensible [sic] under the Workmen's Compensation Law of Oregon."

Although this court has not previously decided this question and although other courts are divided upon it, what I believe to be the better authorities hold that a defendant cannot plead such a defense after previously resisting a claim for Workmen's Compensation. See *Welser v. Ealer,* 317 Pa 182, 176 A 429 (1935); *Buehler v. Philadelphia & R. Ry. Co.,* 280 Pa 92, 124 A 325 (1924). Cf. *Vogel v. Red Star Express Lines,* 73 NJ Super 534, 180 A2d 351 (1962); *Prince v. Saginaw Logging Co.,* 197 Wash 4, 84 P2d 397, 400 (1938). But see *Ham v. Gouge,* 214 Pa Super 423, 257 A2d 650 (1969); *Twork v. Munising Paper Co.,* 275 Mich 174, 266 NW 311 (1936). Cf. *Wilford v. Sigmund Eisner Co.,* 13 NJ Super 27, 80 A2d 222 (1951).[16]

    (b) *Plaintiff did act in reliance upon defendant's denial of her claim.*

The majority correctly state that plaintiff filed her action for damages before her claim for compensation was denied. As previously stated, however, once her claim was denied, plaintiff was entitled to proceed with the trial of her action for damages, including the incurring of substantial expenses for two medical wit-

---

[16]It may be that defendant was defended in this action by a casualty insurance carrier different than defendant's compensation insurance carrier. That fact, however, cannot justify the inconsistency in the two positions to an injured workman.

nesses, on the assumption that defendant's position was, as previously stated, that she had no basis for her claim for compensation under the Act, with the result that her only remedy was an action for damages.

(c) *Plaintiff has already suffered prejudice as a result of defendant's change of position and may well suffer additional prejudice.*

The majority says, in effect, that plaintiff has suffered and will suffer no prejudice from the delay in defendant's change of position because "there had been no final adjudication of the compensation claim prior to the trial"; that "a hearing on the matter had been requested and was still pending."

Again, as previously noted, and aside from whether or not there had been a "final adjudication" of plaintiff's compensation claim, she has already suffered substantial prejudice as a result of defendant's failure to plead its supplemental answer in order that the "exclusive remedy" defense could be decided prior to trial in that had this been done she would not have incurred the substantial expense of the jury trial, including the charges of her two medical witnesses for their appearance and testimony, among other expenses.

5. *The trial court also erred in holding that plaintiff's injury did not result from the "deliberate intention" of her employer.*

Plaintiff also contended that her complaint was not barred by the "exclusive remedy" of the Workmen's Compensation Act because ORS 656.156(2) provides that when an injury to a workman results from "the deliberate intention" of the employer to produce such injury, the workman may bring an action against his employer for damages "over" the amount payable under the Act.

The trial judge made a finding of fact that:

"The assault and battery on the plaintiff was commit-

ted by an employee of the defendant, whose actions were ratified by the employer."

The trial judge held, however, that plaintiff's action was nevertheless barred by the Workmen's Compensation Act. The majority agrees, holding that there was no evidence of a "deliberate intention" by the employer to injure anyone and that subsequent ratification was not sufficient.

I disagree. This is not the usual case in which one employee was assaulted by a fellow employee. In such a case the injury may well be "accidental," rather than "intentional," at least insofar as the employer is concerned. In this case, however, the employer engaged a security officer for the express purpose of apprehending shoplifters. Plaintiff's complaint alleged that the conduct of defendant's "security officer" was "intentional, malicious and done with intent to injure and damage plaintiff." The jury found, by its award of general and punitive damages, that plaintiff had been assaulted by defendant's "security officer" and that the officer's conduct was at least malicious. The trial judge found that defendant subsequently ratified the conduct of the security officer in the assault and battery of this plaintiff.

In my view, the fact that defendant subsequently ratified such conduct by its security officer was at least substantial evidence that the conduct of the security officer in this case was in accordance with *prior* instructions from defendant. Under these facts, I am of the view that plaintiff was entitled to submit to a jury the question whether her injury resulted from the "deliberate intention" of her employer, within the meaning of ORS 656.156(2), and that the trial court erred in holding to the contrary as a matter of law.

A somewhat similar case was *Smith v. Rich's, Inc.,* 104 Ga App 883, 123 SE2d 316 (1961). There the plaintiff's complaint, in an action for damages against her employer, alleged that she was a saleslady employed

by defendant and had been arrested by one of defendant's employees in charge of its "protection department" and that she was, among other things, subjected to a lie detector test which was "an assault" that was "willfully and maliciously carried out by defendant through its said agents * * * after premeditation," and that defendant had "directed and instructed" its agents to arrest her.[17] On appeal it was held that the trial court had erred in sustaining a demurrer to these allegations and that plaintiff was entitled to proceed with her action for damages because the Workmen's Compensation Act applied only to injuries "by accident" and not to injuries alleged to have been done "intentionally and maliciously." See also Annot., 46 ALR3d 1279, 1289-292 (1972), citing other similar cases involving false arrest and imprisonment.

For all of these reasons, I most respectfully dissent.

**HOLMAN, J.,** dissenting.

I concur in that part of the dissent by Tongue, J., which holds that we should not approve procedure which allows a defendant to assert after judgment a defense based upon facts of which defendant necessarily had knowledge at all times and which efficient judicial administration required be tried preliminarily to a full-scale trial.

The excuse which is used for permitting the defendant to assert at that late date the defense of the exclusive remedy under the compensation act is defendant's not learning that plaintiff had *applied* for compensation prior to the commencement of the present trial. It does not take much imagination for any competent lawyer to realize immediately that such a defense is in the picture in any situation in which an employee, while at work on the premises of his employer, is injured by another employee while executing his

---

[17] It is recognized, however, that such facts were not expressly alleged by plaintiff's complaint in this case.

[ 276 ]

duties in the course of his employment. The feeble excuse that this defense occurred to the lawyer only upon his learning that the plaintiff had previously applied for compensation is too thin to be credible.