## BERGMAN,
### *Respondent,*
#### *v.*
## ROSS ISLAND SAND & GRAVEL CO.,
### *Appellant.*

## (No. A7706-08774, CA 15023)

618 P2d 1

Katherine H. O'Neil, Portland, argued the cause for appellant. With her on the briefs were Paul N. Daigle, Ridgway K. Foley, Jr., and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

### WARREN, J.

In a maritime case tried before a jury, plaintiff recovered damages for personal injuries he sustained when the small pleasure boat which he was operating collided with an anchor cable of an unmanned dredge floating in Ross Island Lagoon. Defendant appeals, assigning as errors: (1) the trial court's instruction to the jury that the Pilot Rules for Inland Waters promulgated by the United States Coast Guard were inapplicable to this "industrial pond"; (2) the court's refusal to allow defendant to file a second amended answer charging plaintiff with violation of a Pilot Rule for Inland Waters and its refusal to give a jury instruction based on that provision; and (3) the overruling of defendant's objection made to a question on the grounds that it would elicit evidence of subsequent remedial action from defendant's witness.

On Friday, April 30, 1976, at about 8 p.m., plaintiff and his brother entered Ross Island Lagoon to explore it in their small motorboat. The lagoon, formed by the horseshoe configuration of Ross Island and Hardtack Island in the Willamette River in Portland, is the site of dredging operations which have been conducted by defendant since 1926. Pleasure craft customarily use the lagoon. It was still daylight when the small boat circled the lagoon and attempted to exit, at a speed of about 10 miles per hour, by passing defendant's barge which was situated near the inlet of the lagoon. The barge, a floating dredge less than 65 feet in length, was not in actual operation at the time. A rusty metal anchor cable was stretched horizontally at a slight downward angle from the barge to a yellow anchor buoy located midway between the barge and the shore. Neither plaintiff nor his brother saw the cable, which was not marked. At a point about 80 feet from the barge, the boat passed just under the cable, which struck plaintiff in the face, fractured his jaw and broke several teeth. His brother was caught under the chin and thrown backward but suffered no injuries.

Plaintiff's complaint alleged negligence in obstructing navigable waters with an unmarked cable,

failing to mark the cable with colored cloth, paint, or other devices, and failing to warn of the presence of the cable. Defendant alleged that plaintiff was contributorily negligent in failing to maintain a proper lookout and in operating his boat at an excessive speed without adequate lighting. The jury returned a special verdict finding defendant 80 percent negligent and plaintiff 20 percent negligent, and awarded plaintiff damages.

At the beginning of the jury instructions, the trial court stated:

"Looking at that lagoon or pond out there at Ross Island, and we have to determine just what is that and what are the rights of the people and what are the obligations of the people that are involved out there because as you look at it, it is navigable water by law but it is not out in a main channel where we have all of these rules of the road that are applicable.

"Then, when you try to start pigeon-holing the laws that are set for working dredges out in a channel and for boats that are being used out in the regularly traveled waters and channel and you try to apply them in this situation, it gets very, very complex. So I can tell you in a nutshell that what I've concluded is that this pond out there is just that. It's an industrial pond and although it is navigable waters and general maritime law applies, that all these specific matters pertaining to working dredges and laws designed for channels and laws requiring barges to dip lines for passing vehicles and conversely for passing vehicles of a working barge in a channel to slow to five miles an hour are all inapplicable.

"So what we do, I'm just plain throwing out all of those laws as being an inapplicable situation, being inapplicable to this situation as specific regulations. But beyond that, we've got our common law. I like to call it our common-sense law that still requires certain obligations and duties of people who are running a dredging operation on navigable waters and pleasure boat operators who are using those waters, and so there are general concepts that are still applicable or which you may find to be applicable in evaluating the case. So that's where we are. Do you follow me so far?"

On the third and last day of trial, plaintiff tendered

a second amended complaint, which differed only in minor respects from the amended complaint. Prior to trial, the parties had stipulated that defendant's extant answer would serve as the answer to the new complaint when tendered. Despite the stipulation, after plaintiff tendered the new complaint defendant attempted to amend its answer to allege that plaintiff was contributorily negligent in failing to keep outside the buoys marking the end of the mooring lines. The duty claimed to support that allegation is based on a particular Pilot Rule:

> "Vessels whose draft permits shall keep outside of the buoys marking the end of mooring line of floating plant working in channels." 33 CFR § 80.28.

The court did not allow the amendment and further refused to instruct the jury on the duty to pass outside the buoys, because it found the regulation inapplicable.

■    Neither at trial nor on appeal has defendant explained why it tendered a new defense of contributory negligence for the first time on the last day of trial, when this case had been pending for nearly two years. While the trial judge did not specify untimeliness as a basis for his ruling, we hold that denial of defendant's motion to amend its answer was within the range of the trial court's discretion. At trial, plaintiff contended it would have conducted its discovery differently had it known of the allegation. As in *Quirk v. Ross,* 257 Or 80, 84, 476 P2d 559 (1970), we cannot say with absolute assurance that the plaintiff would have been prepared to counter the defense when it was not made until late in the trial.

■■    Because we hold it was not error to refuse to permit defendant to add the new allegation of contributory negligence deriving from 33 CFR § 80.28, it was not error to deny defendant's request for an instruction to the jury based on that provision. Defendant did not request jury instructions on any other navigation rules. Hence, the trial judge's comments to the jury at the beginning of his instructions, suggesting that such

regulations were generally inapplicable,[1] were not prejudicial to defendant.

■ In its third assignment of error defendant claims the trial court erred in failing to sustain an objection to a question which improperly elicited testimony of subsequent remedial action. Plaintiff's counsel examined the operator of defendant's dredge concerning the availability of strips of cloth or plastic which could be used either to mark the length of cables or to make them more visible. The witness stated that such strips had been used by defendant to mark the anchor cables some time after the beginning of 1976. That evidence, however, was equivocal as to whether the strips were used before or after the incident and was properly admitted on plaintiff's allegation that defendant had failed to mark the cables.

■ Moreover, the equivocal testimony of that witness had been preceded in the trial by a question on cross-examination put by defendant's counsel to plaintiff's brother, which did open the subject of subsequent remedial action.

"Q How about when you came back May 2nd, did you discover the buoy did have something to do with the anchor line?

"A Yes, I did.

"Q I take it you have never seen anchor lines marked with colored cloth?

"A I have.

"Q Where was that?

"A Ross Island Pond.

"Q Was that on May 2nd?

"A No."

---

[1] Coast Guard regulations are, in general, applicable to navigable waters. Ross Island Lagoon is a body of navigable water. *Hahn v. Ross Island Sand & Gravel Co.,* 214 Or 1, 8, 320 P2d 668, *rev'd on other grounds,* 358 US 272, 79 S Ct 266, 3 L Ed 2d 292 (1958). The Pilot Rules for Inland Waters and other navigation rules have been applied to navigable waters not ordinarily considered to be a "channel." *See United States v. Raven,* 500 F2d 728, 732 (5th Cir 1974), *cert den* 419 US 1124, 95 S Ct 809, 42 L Ed 2d 824 (1975); *Duet v. Delta Marine Drilling Co.,* 215 F Supp 898, 901, (E.D.La 1963). 33 CFR § 80.01 states that the Pilot Rules for Inland Waters apply to "vessels navigating the harbors, rivers and inland waters of the United States * * *." No distinction is there drawn between navigable waters and navigable channels. We do not reach the applicability of the particular regulation cited by defendant.

On redirect, plaintiff's counsel established, without objection from defendant, that the brother saw two flags six months after the accident, in the middle of an anchor line in Ross Island Lagoon.

In *Walker v. St. Vincent de Paul,* 239 Or 135, 138-39, 396 P2d 898 (1964), an action in which plaintiff recovered damages for personal injuries, the Oregon Supreme Court said:

"Defendant further asserts that the admission into evidence of an alleged oral statement of defendant's manager that plaintiff's medical expenses would be taken care of was reversible error. The plaintiff, upon direct examination, at the beginning of the trial, had testified that the manager so stated and defendant made no objection or motion to strike such testimony. Counsel probably had good tactical reasons for not objecting to such testimony of plaintiff. However, when testimony has once been received without objection it is within the discretion of the trial court to receive similar testimony subsequently offered although it is objected to when subsequently offered."

As in *Walker,* defendant's counsel here may have had good tactical reasons for not objecting to the redirect testimony of plaintiff's brother which indicated that defendant had taken remedial action after the accident. If we assume the testimony objected to did elicit evidence of subsequent remedial action, that subject having been opened earlier, it was within the discretion of the trial court to allow further testimony on the same topic.

Finally, we note that defendant did not *thereafter* object to the introduction of deposition testimony by defendant's vice-president-in-charge-of-operations that, after the accident, anchor cables were flagged primarily for safety reasons. That was by far the strongest evidence of subsequent remedial action, to which the testimony of the dredge operator was only cumulative.

Affirmed.