Argued and submitted February 18, reversed and
remanded August 3, reconsideration denied September 24,
petition for review denied October 20, 1981 (291 Or 771)

# LANG,
*Respondent,*

*v.*

# OREGON NURSES ASSOCIATION,
*Appellant.*

## (No. A7810-17483, CA 17873)

632 P2d 472

Mildred J. Carmack, Portland, argued the cause for appellant. With her on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Warren C. Deras, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

This case involves the alleged breach of an employment contract. Plaintiff served as executive director of defendant, a nonprofit labor organization. Throughout his employment, which began in October, 1970, he worked under an employment contract for a definite term. On November 15, 1977, defendant's board of directors voted to continue plaintiff's contract for a term retroactively commencing October 1, 1977, and ending September 30, 1978. On December 9, 1977, defendant terminated plaintiff's employment.

In his complaint plaintiff alleged a contract of employment for a definite term, that his employment had been terminated prior to the end of the term and that he had been damaged as a result of defendant's breach of contract. Defendant admitted the major allegations, denied that plaintiff had been damaged as a result of its breach and affirmatively alleged, in seven particulars, that the termination had been for cause. Plaintiff's reply was a general denial of the affirmative defense.

Prior to trial the parties stipulated that the only issues left in dispute were those relating to the seven specifications of cause raised in defense by the answer. Defendant was allowed to put its case on first. The jury returned a verdict for plaintiff.

On appeal, defendant assigns as error the trial court's refusal to instruct the jury to disregard certain questions on plaintiff's cross-examination of defendant's president, Peg Quan, and the court's failure to instruct plaintiff's counsel not to ask the objectionable questions. The questions asked on cross-examination were directed to whether defendant had warned plaintiff that his termination was being considered and whether plaintiff had been given an opportunity to respond to criticism of his performance before termination. Defendant's objections to the questioning were sustained on two occasions, but when plaintiff's counsel inquired a third time the objection was overruled.[1] Defendant argues that such questions were

---

[1] Since the tenor of the examination has some bearing on our analysis, we quote it at length.

irrelevant, because the only issue framed by the pleadings was whether defendant had sufficient "cause" to terminate plaintiff's employment.

---

"Q [By plaintiff's counsel] Do you agree that information with respect to what the employee is doing is important with regards to a hiring decision?

"A Correct.

"Q And equally important to a firing decision?

"A Correct.

"Q And you made a special effort to keep Mr. Lang from knowing that you were planning to fire him or providing any information to the Board as to his side of these issues when you fired him?

"[Defendant's counsel] Objection on the grounds of relevance. The only issue is whether there was cause.

"THE COURT: I don't think the witness fired the plaintiff. The objection is sustained.

"[Plaintiff's counsel] May I restate the question?

"THE COURT: You may state a new question.

"Q [Plaintiff's counsel] Before the association or at the time it was the executive Board that made the decision to terminate Mr. Lang?

"A Correct.

"Q Who took the lead in this decision? Who first brought it up to the proposal to fire Mr. Lang?

"A I brought the information to the attention of the executive committee.

"Q And for how long before — well, the decision was made on December 8th or 9th?

"A Yes.

"Q For how long before that had you been working on firing Mr. Lang?

"A * * * [N]ot very long prior to that time. I met with Bill Lang on November 29th, I believe, and it was at that point that I gained significant additional information about the operations of the office and his behavior in the office, and it was from that day forward that that became a consideration.

"Q Roughly a week and a half?

"A That's correct.

"Q During that time you tried to keep this secret from Mr. Lang?

"[Defendant's counsel] I object on the grounds of relevance. If counsel asks another question like that, I will have a motion.

"THE COURT: The objection is sustained.

We agree the testimony was irrelevant to a determination of cause. In *Marnon v. Vaughan Motor Co., Inc.,* 189 Or 339, 219 P2d 163 (1950), the court said:

> " '* * * [T]he motives which actuate the master in discharging the servant are wholly immaterial, for the act is justified if any legal grounds therefor existed at the time; and it is also immaterial whether the grounds were known to the master, or not, when discharging the servant. Nor is it necessary for the master to assign a reason for the discharge, and, should he assign one, he is not bound by it; nor is he estopped to rely upon some other or different reason or cause, whether known to him at the time of the discharge or not. Wood on Master & Servant, para. 121; 20 Am. & Eng. Ency. L. (2d Ed.) 33.' " 189 Or at 349-50, quoting *Von Heyne v. Tompkins,* 89 Minn 77, 93 NW 901 (1903).

■    Plaintiff argues that the testimony was relevant to whether he had so materially breached the contract as to justify his termination. Prior to giving the testimony at

---

"[Defendant's counsel] Thank you, Your Honor. If counsel has another question like that, I would have a motion.

"THE COURT: That's enough. Objection sustained."

A series of questions followed relating to an evaluation report prepared by board members in 1976, after which the witness was asked:

"Q You were a strong supporter of having a personnel policy in which an employee would have an opportunity to respond to criticisms?

"A Yes. Correct.

"Q And you expressed that to Mr. Lang?

"A Yes.

"Q Was he given an opportunity to do that?

"[Defendant's counsel] I have a motion for the court.

"THE COURT: Very well."

Defendant's counsel requested that the jury be instructed to disregard the question asked and prior similar questions and that plaintiff's counsel be instructed not to repeat his questioning. Plaintiff's counsel argued that the parties' course of conduct was relevant. The court ruled the question was within the scope of cross-examination and denied defendant's request. Plaintiff's counsel continued:

"Q I will repeat my question. Did you give Mr. Lang an opportunity to hear the accusations against him or answer to them before he was fired?

"A No, I did not."

issue here, Quan testified that she had expressed to plaintiff her support for having a personnel policy which would give an employe an opportunity to respond to criticism. Plaintiff's basic contention is that the conduct of the parties can define the terms of their contractual obligations and that the witness' testimony demonstrates an agreement by defendant that it "would not unilaterally and abruptly decide that some type of less than perfect performance by plaintiff would be grounds for his discharge without giving plaintiff an opportunity to correct his performance." Although plaintiff characterizes the evidence as relating to a contractually established standard of performance, we find it relevant only to proving an implied procedure for termination. That is a matter in avoidance of defendant's allegations of cause as a justification for termination. It was not an issue framed by the pleadings or the parties' stipulation, and consequently it was not provable. Former ORS 16.240; ORCP 13B.

■ Plaintiff also argues the testimony was relevant to "the obligation of good faith and fair dealing incident to any contract" and to showing ulterior motive on defendant's part. These arguments focus on defendant's conduct. As long as there were legal gounds to terminate the employment, it does not matter what defendant's motives were. *Marnon v. Vaughan Motor Co., Inc., supra.*

Plaintiff argues that, because defendant, in its case in chief, introduced irrelevant and possibly prejudicial testimony relating to the process by which defendant decided to fire plaintiff, defendant thereby "opened the door" to the collateral issue and, therefore, plaintiff was entitled to counterbalance defendant's evidence with curative testimony on the same issue.

The testimony introduced by defendant was the following colloquy upon direct examination of Lynn Baker, the treasurer of Oregon Nurses Association:

"Q Will you tell the Jury just a little about what the decision-making process was like in deciding to fire Mr. Lang? Was it a quick vote or was it a long discussion or what was involved?

"A It was a very lengthy discussion and we met from 4:00 or 4:30 in the afternoon until almost midnight of the

day in which the decision was made. There were relatively few other items that we discussed during that period of time. The meeting was a meeting of the Executive Committee, which meant that not all of the Board members were present. And I would say that it was — it would have been a meeting where you took off your coat and tie and spent a lot of time deliberating what the action should be.

"Q   Did anybody —

"A   I think that many of us searched for other solutions to our problem."

■       The rationale behind the curative admissibility rule is that:

"Where one party offers inadmissible evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible evidence, presumably upon the same fact, subject matter or issues." *Wynn v. Sundquist,* 259 Or 125, 136, 485 P2d 1085 (1971).

Here, the testimony of defendant's president and that of Baker are related only in the general sense that both refer to the process by which plaintiff was fired. The cross-examination of Quan regarding lack of opportunity to respond to criticism does not negative, explain or counterbalance witness Baker's testimony about the Board meeting. The testimony was not admissible on the grounds of "invited error."

Finally, plaintiff asserts that admission of the testimony was harmless error, because testimony on the same subject was previously received without objection. On cross-examination of Ms. Baker, plaintiff elicited, without objection by defendant, the following:

"Q   With regard to the lengthy process that you described for the termination of Mr. Lang, did you ever, as part of that process, discuss the problems with Mr. Lang?

"A   We did not discuss the problems with Mr. Lang at that meeting, no.

"Q   Or about that meeting?

"A   I did not discuss the problems with Mr. Lang myself before that time."

In *Walker v. St. Vincent de Paul,* 239 Or 135, 138-39, 396 P2d 898 (1964), the court held:

"* * * [W]hen testimony has once been received without objection it is within the discretion of the trial court to receive *similar testimony* subsequently offered."

This rule has since been applied in cases where the subsequently offered testimony was substantially the same as prior testimony. *See Pacific N. W. Bell v. Century Home,* 261 Or 333, 491 P2d 1023 (1971), *modified* 494 P2d 884 (1972); *Bergman v. Ross Is. Sand & Gravel,* 48 Or App 647, 618 P2d 1 (1980), *rev den* (1981). Conversely, in *State v. Ellis,* 243 Or 190, 412 P2d 518 (1966), the rule of *Walker* was not followed, because the subsequent testimony was "not of the same tenor" as the testimony previously given without objection. In that case, defendant was charged with kidnapping; the victim, his former wife, testified without objection that their marriage broke up after defendant had molested their daughter. The daughter thereafter testified, over defendant's objection, that he had raped her. In both instances the testimony was irrelevant. The court reversed, saying:

"The word 'molested,' while it may connote sexual abuse, at the same time may leave the impression of general harrassment. A defendant may prefer not to make an objection to the use of a general statement in the belief that an objection would leave a more damaging impression in the minds of the triers of fact, but when the party then offers evidence to disclose the specific meaning of the general term used, defendant may then wish to object because of its highly prejudicial nature." 243 Or at 194-95.

For similar reasons, we hold that the rule of *Walker* should not be applied here. The first question put to Baker sought and elicited a response that plaintiff was not present at the board meeting at which his termination was discussed. The questions asked Quan were entirely dissimilar, i.e., whether the accusations had been kept secret and whether plaintiff had *ever* been given an opportunity to respond to them before he was fired.

The second question asked Baker was incomprehensible and elicited a response that Baker had not personally discussed the matter with plaintiff before the meeting. The question presented no opportunity for defendant dant to object. The answer was non-responsive, and a motion to strike might have left a more damaging

impression in the minds of the triers of fact than simply letting the statement lie. Quan's later testimony was that she was the person who initially gathered information relating to plaintiff's alleged mismanagement of the office and thereafter brought to the board the proposal to fire plaintiff. The repeated questioning of Quan was direct and required the witness to respond specifically to whether plaintiff had been given an opportunity to address the various criticisms of his performance. Defendant's objections were twice sustained. The relatively innocuous testimony of Baker pales in comparison to the prejudicial effect of the cross-examination of Quan. Plaintiff's argument that Quan's testimony was rendered harmless by defendant's failure to object to the cross-examination of Baker does not hold up under these circumstances.

We find the testimony inadmissible and hold that the trial court's denial of defendant's request to exclude the testimony was reversible error.[2]

Although plaintiff did not cross-appeal, in his brief he assigns as error the denial of his motion for a directed verdict.[3] Plaintiff's motion was on two grounds: (1) that no expert testimony was given regarding the standard of competence to be expected of a management employe, and (2) that the jury could not reasonably conclude there was cause for discharge under the evidence presented.

■■ The necessity of presenting expert testimony to define a standard of conduct depends on whether the conduct to be judged by the jury is within the knowledge of the average juror. *W. R. Chamberlin & Co. v. Northwestern Agencies, Inc.* 289 Or 201, 611 P2d 652 (1980). Plaintiff argues that testimony from persons who deal regularly with labor organization executives was required to establish his standard of performance. The allegations of cause, however, did not speak to plaintiff's performance on *labor*

---

[2] Due to our resolution of this case, we do not reach defendant's remaining assignments of error.

[3] Plaintiff seeks to have the favorable judgment he received affirmed, and, having properly raised the grounds for affirmance in his brief, it was not necessary for him to have filed a cross-appeal. *Bakker v. Baza'r, Inc.,* 275 Or 245, 248 n 2, 551 P2d 1269 (1976); *see Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972).

matters; they were general allegations of financial mismanagement and poor relations with personnel and the board of directors. The average juror would have known whether the duties alleged were ones which a person of ordinary skill and competence in plaintiff's position would have been expected to perform.

Finally, we have reviewed the record and conclude there was sufficient evidence on the material elements of defendant's affirmative defense to raise a question for the jury. *Godell v. Johnson,* 244 Or 587, 590-91, 418 P2d 505 (1966). The trial court did not err in denying plaintiff's motion for a directed verdict.

Reversed and remanded.