Argued and submitted July 22, 1991, reversed and remanded for new trial
February 26, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID HAROLD RENLY,
*Appellant.*

## (89082160; CA A66432)

827 P2d 1345

Stephen R. Ensor, Corvallis, argued the cause for appellant. With him on the brief was Ringo & Stuber, P.C., Corvallis.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

**JOSEPH, C. J.**

Defendant appeals his conviction for sexual abuse in the first degree. ORS 163.427. He assigns error to the trial court's admission of hearsay testimony and denial of his motion for judgment of acquittal. We reverse.

Defendant's mother had provided child care in her home for many years. In 1987, 2 of the children accused defendant of sexually abusing them. Shortly after that, he moved away from home in order to reduce the impact of those accusations on his mother's income. His mother assured the parents of the alleged victim in this case that defendant would never again be allowed to care for or be alone with the children. The alleged victim was 2 years and 9 months old when she made statements that led her parents to believe that defendant had sexually abused her at his mother's house between July 10 and July 13, 1989. Aspengren, a CSD caseworker, and Albany police officer Baker interviewed the child for 30 to 45 minutes. Baker then arrested defendant.

After a pre-trial hearing, the trial court found the child incompetent and unavailable to testify.[1] The state then moved for admission of hearsay evidence under OEC 803(18a)(b) (*since amended by* Or Laws 1991, ch 391, § 1). At the hearing on that motion, the child's mother recounted several statements that the child had made. Aspengren testified about things that the child said during the CSD interview and about the 2 accusations made by the other children in 1987. The mothers of those children then testified and gave detailed accounts of numerous statements that their daughters had made. The court granted the state's motion after finding:

> "Paramount in any analysis of admissibility under the rule and constitutional standards is the declarant's reliability. [OEC 803(18a)(b)] established thirteen factors [to] be considered among others the court may wish to consider. After weighing the thirteen and considering the circumstances as a whole I conclude the requirements of the rule are satisfied."

---

[1] Defendant does not argue that the court erred in that finding.

The court offered additional commentary:

> "The defendant will not be able to confront his accuser if this evidence is received. The legislature and the courts have established a policy to allow this hearsay evidence when certain circumstances exist. The requirements of confrontation are deemed satisfied.

> "Such circumstances exist in this case. The direction we are going is fraught with danger and I hope we will not regret this continued departure from a more cautious standard."

Again before trial, defendant renewed his constitutional objection and moved the court to reconsider its ruling, because the order did not address the statutory requirement that the state present corroborative evidence. The court denied the motion. At trial, the child's parents testified about what the child had said to them, and Baker testified about defendant's arrest. Aspengren testified about the CSD interview. During cross-examination, defense counsel asked if she had tried to interview "any of the other children to see if anyone had seen any of this, or confirm it." Aspengren replied, "No, I did not."

On Aspengren's redirect examination, the prosecution elicited testimony about the 1987 incidents:

> "Q You were asked whether or not you interviewed anybody else who was baby-sat by the Renly's [sic]; have you interviewed other people that were baby-sat by the Renly's [sic]?

> "A In the past I had.

> "Q Who was that?

> "[Defense counsel]: I'll object. The question was if she had interviewed anyone in relation to this.

> "The court: The objection is overruled.

> "Q * * * Who have you interviewed in the past regarding the Renly's [sic] and who was baby-sat there?

> "A There were two specific children that I interviewed, probably, a year or so previous to that, and I'm not sure of the exact date, and that was a little * * * girl about the same age at that time, two-and-a-half years, and a little * * * girl, and she was about the same age, two-and-a-half years.

> "Q Did you interview them about whether or not she [sic] had been abused?

"A  Yes, I did.

"Q  Did she [reveal] abuse to you?

"[Defense counsel]: Again, I will object as being outside the scope of relevancy; beyond the scope of this trial.

"The court:  Overruled.

"* * * * *

"Q  Did either one or both of those little girls reveal whether or not they had been abused?

"A  Yes, both of them did.

"Q  Sexually abused?

"A  Sexually abused.

"Q  Did she [*sic*] reveal by whom?

"A  Yes, she [*sic*] did.

"Q  Who?

"A  By David Renly in Judy Renly's home."

Defendant argues that the court should have excluded Aspengren's testimony about the 1987 accusations on 3 grounds: It was elicited on redirect examination by questions that were beyond the scope of the previous examination; it was hearsay that did not satisfy the requirements of OEC 803(18a)(b) or any other exception; and it was evidence of prior bad acts inadmissible under OEC 403 and 404(3). The state responds that defendant "opened the door" by using the 1987 accusations and their consequences to explain why he did not have an opportunity to commit the offense charged in this case.

The state seems to understand that a party has "opened the door" to otherwise inadmissible evidence merely by raising the subject matter. The theory that the state relies on is also known as the "curative admissibility" rule or the "invited error" doctrine. *Lang v. Oregon Nurses Assn.*, 53 Or App 422, 427-29, 632 P2d 472, *rev den* 291 Or 771 (1981). The rationale for it is:

"[W]here one party offers inadmissible evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible evidence, presumably upon the same fact, subject matter or issue." *Wynn v. Sundquist*, 259 Or 125, 136, 485 P2d 1085 (1971).

■ ■     Aspengren's testimony about the children's statements was not independently admissible under OEC 803(18a)(b), because (1) the state did not provide the requisite notice that it intended to introduce that hearsay at trial and (2) the court did not make the requisite findings that the declarants were unavailable, the statements were inherently reliable and other evidence corroborated the acts and defendant's participation in them. Aspengren's testimony appears to have been offered to prove the truth of the 1987 allegations underlying defendant's more general explanation of what caused his family to watch him carefully. *See, e.g., State v. Ellis*, 243 Or 190, 194-95, 412 P2d 518 (1966); *Lang v. Oregon Nurses Assn., supra,* 53 Or App at 429-30. We conclude that it did not in any way tend to negate, explain or counterbalance any misleading or unfair impression that defendant's evidence could possibly have caused the jury. Therefore, there was no "open door" to its admissibility. On the other hand, as evidence of prior bad acts, it did have a substantial capacity to prejudice defendant by leading the jury to infer that he acted in conformity with those acts on this occasion.[2] The trial court should have sustained defendant's objection. On that ground, we reverse and remand for a new trial.

Because the issue will likely arise again in a new trial, we will address defendant's assignment of error about the pre-trial rulings regarding testimony about the alleged victim's statements.

Defendant argues that the court should have excluded all of the testimony about the victim's statements because, as applied in this case, OEC 803(18a)(b) is unconstitutional under the Sixth Amendment[3] and Article I, section 11, of the Oregon Constitution.[4] The state asserts that the statute is constitutional under the Sixth Amendment,

---

[2] Even had the evidence not been hearsay, it would not have been admissible for that purpose. OEC 404(3).

[3] The Sixth Amendment provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

[4] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

*Idaho v. Wright*, 497 US 805, 110 S Ct 3139, 111 L Ed 2d 638 (1990), and under the Oregon Constitution. *State v. Moen*, 309 Or 45, 786 P2d 111 (1990).

The Oregon Supreme Court has adopted the reasoning of the Supreme Court of the United States in determining whether hearsay declarations are sufficiently reliable that they may be admitted without violating a defendant's rights under Oregon's Confrontation Clause. *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985); *see also State v. Stevens*, 311 Or 119, 140, 806 P2d 92 (1991); *State v. Moen, supra.* In *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), the Court held that, before hearsay evidence can be admitted, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." 448 US at 65. If the declarant is unavailable, the statement is admissible "only if it bears adequate 'indicia of reliability.'" 448 US at 66.

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." 448 US at 66.

In *Idaho v. Wright, supra*, the Court defined "firmly rooted." The trial court had applied Idaho's residual hearsay exception to allow statements that a 2½-year-old declarant had made to an examining pediatrician. The Court explained:

"Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded long-standing judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements. * * * The residual hearsay exception, by contrast, accommodates ad hoc instances in which statements not otherwise falling within a recognized hearsay exception might nevertheless be sufficiently reliable to be admissible at trial. Hearsay statements admitted under the residual exception, almost by definition, therefore do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception." 497 US at ____. (Citations omitted.)

OEC 803(18a)(b) was enacted to address some of the difficulties that had arisen in attempting to apply Oregon's residual hearsay exception, OEC 803(25)(a) (*former* OEC

803(24)), in child sexual abuse cases. *See, e.g., State v. Campbell, supra.* OEC 803(18a) had allowed only evidence of the fact that the prosecuting witness had made a complaint of sexual misconduct. Subsection (b) was added to authorize hearsay statements in a criminal trial or juvenile court proceeding, if the child sexual abuse victim testifies and can therefore be questioned about the hearsay reports. It also allows hearsay evidence in a criminal trial or juvenile proceeding when the child is unavailable to testify, if the court finds that the statements are reliable *and* that "there is corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct."[5] The rule neither codified common law nor reflected a long-standing exception. Therefore, it cannot be called a "firmly rooted" hearsay exception. It is on the same footing as the residual hearsay exception in *Idaho v. Wright* with respect to its constitutionality under the Confrontation Clauses.

The rationales underlying the Confrontation Clauses and the Rule Against Hearsay are in some respects similar: Hearsay is generally unreliable, because the declarant is not available for cross-examination that could uncover inaccuracies and other factors bearing on truthfulness and trustworthiness. *Idaho v. Wright, supra,* 497 US at ____. However,

---

[5] The 1989 version of OEC 803(18a)(b), which is applicable in this appeal, provides, in part:

"A statement made by a child victim who is under 10 years of age, which statement describes an act of sexual conduct performed with or on the child by another, is not excluded by ORS 40.455 if the statement is offered as evidence in a criminal trial or juvenile court proceeding and if the child either testifies at the proceeding and is subject to cross-examination or is unavailable as a witness and if the proponent of admissibility establishes to the satisfaction of the court outside the presence of the jury, if any, that the time, content and circumstances of the statement provide substantial indicia of reliability. However, when the child is unavailable as a witness, the statement may be admitted in evidence only if there is corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct."

The 1991 legislature raised the age limitation to 12. Or Laws 1991, ch 391, § 1. It also excised the requirement that the statement be offered in a criminal trial or juvenile proceeding so that "psychologists, marriage therapists, clinical social workers [may] testify in civil cases as to statements made to them by persons in connection with their treatment, if that person has consented." Tape recording, third reading of HB 2395 on the House floor, March 21, 1991, Tape 7B at 217-39 (statement of Rep. Parks, who carried the bill).

"if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." 497 US at ___.

■ The test for admission of hearsay established in *Roberts* requires "a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts, supra,* 448 US at 66. In *Wright,* the Court explained that any number of factors might pertain, and it provided examples of indicators that courts have considered in the child sexual abuse context. However, it expressly declined to adopt specific criteria:

"Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Idaho v. Wright, supra,* 497 US at ___.

If a trial court examines the proferred hearsay under pertinent factors and finds that the statements are inherently trustworthy, then the evidence can be admitted without violating a defendant's confrontation rights.

OEC 803(18a)(b) protects a defendant's confrontation rights with greater clarity, detail and precision than *Roberts* and *Wright* seem to require. Before a court can find a witness unavailable, it must first examine the declarant and find that the criteria for unavailability are satisfied, OEC 804; *see also State v. Campbell, supra,* 299 Or at 652, or that the child

"has a substantial lack of memory of the subject matter of the statement, is presently incompetent to testify, is unable to communicate about the offense because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying." OEC 803(18a)(b) (*since amended by* Or Laws 1991, ch 391, § 1).

In addition, the rule expressly provides that

"[t]he purpose of the examination shall be to aid the court in making its findings regarding the child's availability as a witness *and* the reliability of the child's statements." OEC 803(18a)(b). (Emphasis supplied.)

The statute provides a non-exclusive list of factors for deciding whether statements are reliable.[6] Neither *Roberts* nor *Wright* indicates that the court must examine the child, and neither requires that a specific list of criteria apply. The procedures that the rule requires the court to follow and the criteria that it requires the court to consider, as applied in this case, satisfy Sixth Amendment protections under *Roberts* and *Wright*. The rule is, therefore, lawful under the Oregon Constitution as well. *State v. Campbell, supra.*

Defendant argues that, even if the rule is constitutional, the statements offered in this case are not admissible, because the state produced no admissible evidence to corroborate the act of sexual conduct or defendant's participation in it. The state argues that corroborative evidence must be produced *only* in a pretrial hearing, which OEC rules do not control. It contends that the testimony of the mothers of the

---

[6] In addition to the portion quoted in n 5, *supra*, the 1989 version of OEC 803(18a)(b) provided, in part:

"In determining whether a statement possesses substantial indicia of reliability under this paragraph, the court may consider, but is not limited to, the following factors:

"(A)  The child's personal knowledge of the event;

"(B)  The age and maturity of the child;

"(C)  Certainty that the statement was made, including the credibility of the person testifying about the statement and any motive the person may have to falsify or distort the statement;

"(D)  Any apparent motive the child may have to falsify or distort the event, including bias, corruption or coercion;

"(E)  The timing of the child's statement;

"(F)  Whether more than one person heard the statement;

"(G)  Whether the child was suffering pain or distress when making the statement;

"(H)  The nature and duration of any alleged abuse;

"(I)  Whether the child's young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

"(J)  Whether the statement has internal consistency or coherence and uses terminology appropriate to the child's age;

"(K)  Whether the statement is spontaneous or directly responsive to questions;

"(L)  Whether the statement was elicited by leading questions; and

"(M)  Whether extrinsic evidence exists to show the accused's opportunity to commit the act to which the child's statement refers."

*See also* n 7, *infra.*

children involved in the 1987 incidents was "corroboration *of the victim's statements.*" (Emphasis the state's.)

■■    The state is correct that a trial court is not bound by the Oregon Evidence Code, except with respect to privileges, in receiving evidence on preliminary questions of admissibility of evidence. OEC 101(4)(a); OEC 104(1). The state is also correct that OEC 803(18a)(b) does not predicate admission of hearsay statements on the presentation of the corroborative evidence *at trial.* What the state seems confused about is what the corroborative evidence must corroborate.

■    Extrinsic evidence that the defendant perpetrated the crime does not tend to show that hearsay is trustworthy. Only the content of the statements and the circumstances in which they were made is relevant to that determination.

> "To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. * * *
>
> "[T]he use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." *Idaho v. Wright, supra,* 497 US at ____.

Once the court has considered the competence of the maker of the statements, the character of the statements and the circumstances in which they were made, trustworthiness can be decided, and that inquiry then ends.

Corroboration is an additional prerequisite that the legislature included in OEC 803(18a)(b) to ensure that an accused not be convicted solely on the basis of hearsay. *See, e.g.,* Minutes, Senate Committee on the Judiciary, February 27, 1989, p 2 (testimony of Assistant Administrator of the Children's Services Division). The statute requires *independent* corroborating evidence, which might include a confession, an eye witness account, physical evidence and evidence showing that the accused had access to the purported victim.

*See, e.g.,* Minutes, Senate Committee on the Judiciary, February 27, 1989, pp 2-5, 9 (testimony of C. Streisenger, Legal Counsel for Gov. Goldschmidt; J. Collins, Yamhill County District Attorney; D.A.K. Wilson, Assistant Attorney General, representing Department of Justice).[7]

■ The evidence that the prosecution offered at the pretrial hearing here was almost entirely hearsay. There was no confession (defendant had consistently denied the allegations), no physical evidence (medical or otherwise), no eyewitness account of the conduct itself or of unusual sexual behavior of the child. There is in the record only one piece of evidence independent of the child's statements that could even suggest that sexual conduct had occurred: Aspengren testified that, at some point during her interview, the child pointed to her vaginal area to demonstrate what she meant by her "bottom."

The child's mother, who worked in a hospital, testified *at trial* that the child became upset and resisted a pediatrician's attempt to examine her below the waist.[8] The state suggests that that observation tends to corroborate an act of sexual conduct. That is raised for the first time on appeal, and the trial court did not decide anything about it in the first instance. Even if the state were correct, however, it

---

[7] The 1991 amendment clarifies that the rule requires corroboration separate from and additional to facts that demonstrate that the statements are reliable. As amended, OEC 803(18a)(b) requires that the statements only be found *reliable* if they are to be used in a civil case. In contrast, the state must show both reliability *and* corroboration in a criminal trial.

"[W]hen a child under 12 years of age is unavailable as a witness, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of sexual conduct and of the alleged perpetrator's opportunity to participate in the conduct *and that* the statement possesses indicia of reliability as is constitutionally required to be admitted." OEC 803(18a)(b). (Emphasis supplied.)

In recognition of the holding of *Idaho v. Wright, supra,* the 1991 legislature deleted factor (M), *see* n 6, *supra,* from the list of reliability indicators and amended the corroboration clause. Minutes, House Committee on Judiciary, Subcommittee on Family Justice (Feb. 27, 1991 — work session discussion between Rep. Kelly Clark, Chair, and Holly Robinson, Committee Counsel). The 1989 version required the state to produce *extrinsic* evidence of 2 facts: (1) Sexual conduct occurred; and (2) defendant participated in the conduct. The rule now permits the state to satisfy the second requirement by extrinsic evidence that a defendant had an *opportunity* to participate.

[8] The pediatrician did not testify at the pretrial hearing or at trial.

does not help its case, because that testimony was not presented in the pretrial hearing, where corroborative evidence *must* be presented before the hearsay can be found admissible.

The state also argues that the testimony by the mothers of the purported 1987 victims "is corroboration *of the victim's statements.*" (Emphasis the state's.) It points out that the victims were all about the same age, reported similar types of abuse and claimed that the incidents occurred in the Renly home. That acts of sexual conduct occurred on other occasions with other children does not corroborate that sexual conduct occurred on the occasion charged. If we were to assume that the 1987 conduct did occur, evidence of defendant's involvement might suggest a pattern that would tend to corroborate his participation in it. *See* OEC 404(3). However, all of the supposed similarities except the ages of the children were also presented as hearsay. The 1987 declarants did not testify, and the court made no findings that defendant's confrontation rights were otherwise satisfied. The rules of evidence did not preclude presentation of that hearsay at the pretrial hearing, but the Confrontation Clause precludes holding that it corroborated anything.[9]

The state argues that the child's first statement that indicated that she might have been abused corroborates that sexual conduct and defendant's participation both happened, because it was independently admissible under the excited utterance exception in OEC 803(2). The child walked into the bathroom while her father was urinating. Her mother testified that "she ran out and said to me something like, 'David has one of those.' " When asked to describe the child's emotional state, her mother explained:

> "[H]er eyes were real big, and she was very earnest and intense, and just on the verge of being afraid. She wasn't crying or anything, but she was just very intense about what she was saying to me."

---

[9] We have no occasion to consider whether the statements about the 1987 incidents could have been used at the pretrial hearing as corroboration, if the court had first found the children unavailable and had then applied the indicia of reliability inquiry to those statements. *See State v. Alvarez,* 110 Or App 230, 236, 822 P2d 1207 (1991).

■     The trial court did not rule on the admissibility of the statement as an excited utterance. Even if it were admissible, however, the state's conclusion does not follow from its premise. As noted above, the admissibility of evidence at trial does not affect whether the evidence can serve as corroboration at the pretrial hearing. The legislature clearly intended that a defendant not be convicted on hearsay alone; therefore, a declarant's admissible statement cannot be used to bootstrap into admissibility otherwise inadmissible statements made by the same declarant.

The only other evidence that the state offered as corroboration amounts to a showing that defendant *might* have had an opportunity to be alone with the alleged victim for a few minutes. Defendant's mother testified that, as a result of the 1987 allegations, members of his family were very careful to supervise defendant when he was visiting. The state relies on 2 statements to show that defendant nevertheless had access to the child. First, Baker testified that defendant admitted that he visited the Renly home "in July [19]89, from time to time." Second, the prosecution asked defendant's mother, "Do you remember telling Officer Baker that David could have possibly had a few minutes with any of the kids, but you can't guarantee that he did not?" She responded, "Yes, I mean, you know."[10] That evidence, if it is

---

[10] Later, at the trial, the witness was permitted to explain the context of the statement.

CROSS-EXAMINATION (in progress)

"Q: You remember telling Officer Baker that David could possibly have a few minutes with any of the children?

"A: I — by that, I meant before —

"Q: Do you remember saying that?

"A: Yes.

"Q: You remember saying that you could not guarantee that he was not alone with the children or one of the children?

"A: Yes.

"[Prosecutor]: No further questions."

REDIRECT EXAMINATION

"Q: What did you mean by that when you told him that he possibly could have had a few minutes with any of the children?

"A: Well, before I had any idea that anything like this could possibly have happened or anything. My son, you know, came and gone [sic] whenever; he could have been in the kitchen talking with them, he could have been out in the backyard talking with them, or he could have been watching TV in the family room, you know, before this time—before I knew that I had to, you know, keep a

probative of anything at all, does nothing to show that an act of sexual conduct occurred. Even if it could satisfy the second corroboration requirement (*i.e.*, that defendant had an opportunity), the first requirement (*i.e.*, that sexual conduct occurred) remains unsatisfied.

■　　　The trial court did not address the issue of corroboration. When defendant renewed his objection at the beginning of the trial, the court replied:

> "The Court, in its memorandum opinion * * *, ruled on the admissibility [in] the next to last paragraph * * * that, and I quote: (Reading opinion). . . 'the particular issue as relates in B; [*sic*] however, when a child is unavailable as a witness the statement may be admitted in evidence only if there's corrorative evidence of the act of sexual conduct, and of the defendant's participation in the conduct.' "[11]

very, very close eye. I didn't know there was anything to be watching for. But, then, I watched every move that he made.

"Q: Officer Baker talked to you, did you try to talk about all of these allegations, even the ones that were two years previous?

"A: Yes, he did.

"Q: And so when you were responding to his questions you were saying in response to all of these different allegations?

"A: Yes, I was.

"* * * * *

"Q: Start focusing in on this one week in July that we're concerned about. Specifically, during that period of time did you — I mean, was there ever anytime that your son David Renly was alone with any of these children?

"A: No.

"[Prosecutor]: Objection, asked and answered.

"[The Court]: Overruled.

"Q: The question was: Was there anytime that your son David Renly was alone with any of these children?

"A: No, he was not.

"Q: Are you sure about that?

"A: I'm positive.

"[Defense counsel]: No more questions."

RECROSS-EXAMINATION

"Q: You did not tell Officer Baker that you were positive, did you?

"A: I was referring to the fact that the '87 I could not positively said that. In '89 I could.

"[Prosecutor]: No further questions."

[11] We quote the transcript. We assume that a clerical error caused the omission of that paragraph from the memorandum opinion in the trial court file.

Even with that explanation, we cannot discern what evidence the trial court relied on as corroboration of the act of sexual conduct and of defendant's participation in it. For us to be able to review a decision to admit hearsay evidence by an unavailable declarant under OEC 803(18a)(b), the trial court must have made the required findings on the record. *State v. Jones*, 103 Or App 123, 127, 796 P2d 670 (1990), *rev den* 311 Or 166 (1991). We cannot say that the trial court found sufficient corroboration that is independent of the hearsay about the 1987 incidents.[12]

Reversed and remanded for a new trial.

---

[12] Whether evidence corroborates an act of sexual conduct and defendant's participation is a preliminary question of fact, because it concerns the admissibility of evidence. *State v. Carlson*, 311 Or 201, 211, 808 P2d 1002 (1991).